**LOCAL 937 OF INTERNATIONAL UNION UNITED AUTOMOBILE, AIRCRAFT AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, C. I. O. et al. v. ROYAL TYPEWRITER CO., Inc.**

Civ. No. 2483.

United States District Court
D. Connecticut.

Aug. 12, 1949.

William S. Zeman, Hartford, Conn., for plaintiffs.

Walfrid G. Lundborg, Shipman & Goodwin, Hartford, Conn., for defendant.

SMITH, District Judge.

This is an action brought by a labor union on behalf of itself and a number of its members against an employer, claiming damages for breach of contract and injunctive relief by way of specific performance of the contract. The dispute involves the interpretation of an hourly rate provision for piece workers.

Plaintiff's authorized officers and agents are engaged in representing and acting for employee members in Hartford, Connecticut, and this Court has jurisdiction to grant money damages in this suit for violation of contract pursuant to Section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185(a).

Plaintiffs contend further that injunctive relief may also be obtained under the diversity jurisdiction. It is a labor dispute and I agree with Judge Rifkind that Congress would have been more specific if it intended to restore the general power to grant injunctive relief. Alcoa

S. S. Co., Inc., et al. v. McMahon et al., D.C. 1948, 81 F.Supp. 541. See also United Packing House Workers v. Wilson and Co., D.C. 1948, 80 F. Supp. 563; Amalgated Ass'n of Street Electric Ry. & Motor Coach Emp. of America v. Dixie Motor Coach Corp., 8 Cir., 1948, 170 F.2d 902. In any case, there is here no irreparable injury to the union, such as existed through refusal of the checkoff in the Colorado case. Cf. Mountain States Division No. 17 v. Mountain States T & T Co., D.C. 1948, 81 F.Supp. 397.

On the merits, the question involved is the meaning of a one-line provision; Item 2 in a memorandum of agreement between the employer and the union, stating minimum rate of pay for pieceworkers in the assembly departments of defendant's plant. Prior to October 1, 1948, there was in existence a contract between the employer and a local of the United Electrical Workers union, representing the employees. That contract provided that it should remain in force automatically for one year periods unless denounced by one party or the other sixty days prior to October 1, 1948. However, the United Electrical Workers local failed to qualify under the non-communist-oath provision of the Taft-Hartley Act and the present plaintiff became the bargaining representative of the employees and was duly certified as such. Negotiations were had between representatives of the plaintiff and of the defendant prior to October 1, 1948, looking toward agreement upon a new contract. The negotiations were unsuccessful, however, and the membership of the plaintiff went out on strike on October 10th, 1948. Attempts at mediation and conciliation were made by both federal and state bodies, culminating in a meeting at which the contract in suit was drawn up. The contract was ratified by the union membership at a mass meeting and the employees returned to work. The contract, which is in evidence as Exhibit E, covered the points in dispute in very brief statements and continued in effect the provisions of the former contract between the defendant and the United Electrical Workers local, except as modified by the memorandum of agreement.

The item in dispute was as follows: "Assembly Department Guarantee minimum piecework earnings, $1.10 per hour." It was stated at the conference, which was held by officers of the defendant and representatives of the plaintiff, counsel being excluded, that a general 9¢ increase would be given to the pieceworkers in the assembly departments and that if this was not sufficient to bring up the girls' earnings to the $1.10 an hour minimum at the existing production standard for the amount of work to be turned out within a given period, the standard would be raised sufficiently so that, at the new standard number of pieces, the new rate would produce a minimum of $1.10 an hour. There were several jobs in the assembly departments for which the old minimum rate had been established, by collective bargaining and time study, at 92¢ an hour. For some time, at the request of the management, some of the employees had been consistently turning in an overage, above the old minimum standard, at these jobs. Some of the employees had, however, refused to produce more than the established minimum standard number of pieces and under the old contract no disciplinary action had been taken against them.

Following the return to work after the strike, however, the representatives of the management arbitrarily, without further time study, raised the standards on these jobs to a figure high enough, in all but one minor instance, to produce the $1.10 an hour with a raise in the piece rate equivalent approximately to 9¢ an hour on the old standards. Five of the girls working on these jobs declined to raise their production from the old standard number to the new, although they could have done so without any great difficulty. For this refusal they were discharged.

The plaintiff contends that the contract provision must be read in the light of the existing standards and that, so read, it called for an increase in pay for the production of the old number of pieces from 92¢ to $1.10 on the jobs in question.

Defendant contends that we may not go outside of the words of the provision itself, and that it calls for a minimum of $1.10 per hour without any standard of

production being set at all, this to be left to establishment by the management. We must, however, to find the intention of the parties, look to the factual background of the use of the words here chosen by the representative of the defendant in dictating the memorandum. Restatement of Contracts Section 230; New Haven Sand Blast Co. v. Dreisbach, 102 Conn. 169, 180, 128 A. 320; Colonial Trust Co. v. Hilton, 111 Conn. 77, 80, 149 A. 513; Finlay v. Swirsky, 103 Conn. 624, 635, 131 A. 420.

That background does not fully support either contention for it shows that standards of production were in existence and were subject to modification. It cannot be contended that defendant would agree to pay $1.10 an hour to pieceworkers with no regard whatever to the amount produced. Nor did the parties negotiate on the basis of freezing the old standards.

 There was a standard in existence and there was in existence, in the old contract, a method for adjusting standards by time study. The negotiations had made it plain (and we may consider them for background, although not to alter provisions of a contract) that the flat raise to the pieceworkers by adjustment upwards of the price per piece would approximate 9¢ per hour. It was obvious, therefore, that some other adjustment, which must be in the minimum standards, would be necessary to bring the 92¢ jobs up to $1.10. With the background of the time-study provisions of the old contract, however, the parties cannot be held to have contemplated a rise in production standards which would not be justified by time studies. I take the contract provision, therefore, as having the meaning that $1.10 minimum would be paid, to be accomplished in part by the approximately 9¢ an hour increase through re-pricing, and in part by an upward revision of minimum standards which would appear to the parties to be possible on the basis of their knowledge of the conditions of the jobs but whose extent on each job must depend upon a new time study of the job in accordance with the method provided in the old contract.

Damages should be awarded to the five employees who were discharged.

The case is assigned for a hearing of evidence as to damages, Monday, September 26, 1949 at 10:30 A.M. at Hartford. If, however, the parties so stipulate prior thereto, a form of judgment in accordance herewith may be submitted.