## KNUDSEN v. CHICAGO & NORTHWESTERN RY. CO.

United States District Court
N. D. Illinois, E. D.
Feb. 11, 1952.

Silver, Marciniak & Doherty, Chicago, Ill., for petitioners.

Lowell Hastings, Drennan J. Slater, Elwood Warden, Chicago, Ill., for defendant.

LA BUY, District Judge.

The amended complaint is brought by three named plaintiffs on behalf of themselves and all others similarly situated. The named plaintiffs are alleged to be authorized to represent operating employees of the defendant in the litigation of this action. There are three counts in the amended complaint. The first is brought pursuant to Section 153, subd. 1 (p) of the Railway Labor Act, 45 U.S.C.A., to enforce an order of the National Railroad Adjustment Board, plaintiffs claiming to be beneficiaries under such award. The second count and the third count rest jurisdiction upon diversity of citizenship and requisite jurisdictional amount. The second count alleges defendant has violated Appendix Rule 51 of the contract of January, 1927, between the Brotherhood and the railroad and that the Board has interpreted this rule to mean plaintiffs are entitled to one-half of all transfer work performed. The third count alleges that the carrier is violating Article II of the agreement of December 18, 1919, with the Brotherhood since plaintiffs are entitled to one-half of all the transfer work performed. It is alleged that plaintiffs are unable to ascertain the exact amount of damages and request an accounting from the defendant of all transfer work performed.

For a fuller understanding of the controversy sued on the following facts appear pertinent. Prior to January 1, 1927, the Brotherhood of Locomotive Firemen and Enginemen, alleged to be the duly certified bargaining agent of these plaintiffs, entered into a contract with the defendant

fixing terms and conditions of employment. In said agreement Appendix Rule 51 provided in part as follows:

"Definition—Work of Road and Terminal Firemen in Chicago.

"51. Question 1. What constitutes work of Chicago Terminal Firemen?

"Answer: The work of assembling and disposing of cars entirely within the terminal district, the local junction switch runs excepted, and includes freight and passenger switching, transfer service and work trains."

This rule is the basis of the administrative proceeding and of the second count of the amended complaint.

In addition on December 18, 1919 the Brotherhood of Railroad Trainmen entered into an agreement with defendant carrier and other railroads fixing rules and rates of pay of yardmen in the Chicago Switching District. Article III of said agreement defines yard work and provides in part:

"(a) The following shall be considered yard work, shall be handled by yardmen and shall be compensated for at not less than yard rates. * * *

"(c) The transfer of all freight and passenger equipment operating exclusively within the switching limits; * * *."

This article is the premise for the claim alleged in the third count of the amended complaint.

In 1941 the Brotherhood of Locomotive Firemen and Enginemen and the Chicago and Northwestern Railway Company became parties to a dispute submitted to the National Railroad Adjustment Board. The claims proferred by the Brotherhood were (1) one day's pay at the transfer rate April 1, 1939 and other dates, account Indiana Harbor Belt Railway taking cars from 40th Street to Wood Street over Chicago and Northwestern tracks; (3) a protest on account of foreign line yard crews taking interchange out of 40th Street, Proviso, Wood Street and all other points in Chicago terminal, handling same over Chicago and Northwestern rails between the above-named points where they leave Chicago and Northwestern tracks, and (3) that foregin line crews delivering cars to Chicago and Northwestern do so at the first available yard after entering Chicago and Northwestern territory.

On June 21, 1941, the Board made the following findings:

"The protest is allowed and the parties are directed to forthwith negotiate a plan based on total volume of cars handled or trips made and miles traversed, which will place the employees of the carrier on a plane of approximate equality with the employees of each carrier with which cars are interchanged and without incurring light movements. In all other respects the claim is denied."

An order was transmitted to the carrier to make this award effective as follows:

"The Chicago and Northwestern Railway Company is hereby ordered to make effective Award No. 5791, made by the First Division of the National Railroad Adjustment Board (copy of which is attached and made a part hereof), as therein set forth; and if the award includes a requirement for the payment of money, to pay the employee (or employees) the sum to which he is (or they are) entitled under the Award on or before July 19th, 1941."

In general the complaint alleges that there has been no compliance by the carrier with said award and further the carrier has continued to violate the aforesaid rules and articles of the contracts.

■ Of prime importance at the outset is a determination of the rights of these plaintiffs to prosecute an action under the Railway Labor Act as alleged in Count I; that is, whether these plaintiffs who are not alleged to be members of the union can sue as beneficiaries of the award of the Board.

The Railway Labor Act, Section 153, subd. 1(p) permits "any person for whose benefit such order was made" to file a petition for its enforcement. It is urged by the plaintiff that all employees of the class specified, members and non-members of the union, are beneficiaries under the award.

The court is of the opinion this theory is correct and any employee of the class represented by the labor organization may sue on an award entered for the benefit of the class or craft without regard to membership in the representative organization. To such an action the Brotherhood is not an indispensable party since the statute clearly provides that action can be brought by the Petitioner before the Board or any person for whose benefit such an order was made. It is necessary, however, that allegations be made placing the employee within the identity of the class or craft represented in the proceedings before the Board. Plaintiffs should amend to include such allegation.

Having determined that plaintiffs have the right to sue under the award, the court proceeds to the issue raised that the award sued upon is invalid. The defendant asserts that it is not enforceable for the reason that it does not contain precise and definite determinations of fact, fails to fix any time limit for compliance, and in any event more than two years have elapsed during which an action could be brought. It is urged that by the order and award the parties are directed only to enter into negotiations for a plan based either on total volume of cars handled or trips made and miles traversed so as to place defendant's employees on a plane of approximate equality without incurring light movements; that the effect of said award was to direct both the Brotherhood and the carrier to negotiate a plan which was not to give the employees *all* transfer work within the district but only *half* of what the Brotherhood claimed was their lawful work; that such negotiation means agreement by all parties in interest and means a plan that would be worked out through conferences and not that the carrier independently and by its sole action was required to put such plan into effect. It is the contention of the plaintiffs that the award determined that the Brotherhood was entitled to one-half of the work since it provided that the employees be placed on a "plane of approximate equality" with other carriers.

As was stated in System Federation No. 59 v. Louisiana & A. Ry. Co., 5 Cir., 1941, 119 F.2d 509, 513:

"* * * The act contemplates not merely general conclusions, but precise and definite findings of fact and final and definite awards, capable of enforcement, not vague general outlines which must be filled in by the courts."

An award directing the parties to negotiate a plan which will place the employees of the carrier on a plane of approximate equality does not inform the carrier what it is required to do. While the plan is to be premised upon information regarding volume of cars, miles traversed and trips made, such information depends upon participation of both parties. The award is not precise and definite as to what the carrier should do, nor are the findings or award sufficiently definite and certain so as to make a prima facie case in favor of the plaintiffs.

In addition the court is of the opinion there is merit to the defendant's contention that there was no time limit set for compliance. The order directed to the carrier states that defendant

"is hereby ordered to make effective Award No. 5791, made by the First Division of the National Railroad Adjustment Board * * * as therein set forth; and if the award includes a requirement for the payment of money, to pay the employee * * * the sum to which he is * * * entitled under the award on or before July 19, 1941."

The findings did not require defendant to pay money to any employee and in fact a claim for one day's pay was specifically denied. It appears, therefore, that the order is silent as to the date by which the carrier was to comply in negotiating a plan.

The next consideration affecting the amended complaint in its remaining counts is whether the plaintiffs can maintain a class action based on diversity and alleged jurisdictional amount when the issue has been raised that the claims of the

individuals in no circumstances exceed $3000.

Resolution of the propriety of this class suit depends upon whether the joinder of the members of plaintiffs' class is based upon a right which is (1) "joint, or common, or secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it," or (2) "several, and there is a common question of law or fact affecting the several rights and a common relief is sought."

It is alleged that plaintiffs are employees of the defendant carrier and bring this action "on behalf of themselves and all other operating employees of the Chicago Freight Terminal seniority district of the Chicago and Northwestern Railway Company similarly situated"; that said operating employees are entitled to assert their rights as a class because that questions of law and fact which arise in this action are common to all such employees; that the said operating employees number approximately 600 and that therefore it is impracticable to bring them all before this court; it is further alleged the named plaintiffs were nominated and appointed by said operating employees as their duly authorized committee to retain legal counsel for purpose of suit and have given said committee full and complete authority with reference to their claims.

As a general rule it has been conceded that the authority of a labor organization as statutory bargaining agent to enter into a contract with a railroad concerning wages, hours, conditions of employment, seniority rights of members of the craft inures to the benefit of all members of the craft whether they are members of the union or not. Federal legislation has recognized collective bargaining between railroads and their employees and there must be some agency vested with authority to represent and bind all the employees of each class or craft, whether or not members of a labor organization, for the preservation of the rights of the employees and for the protection of the public.

However, the plaintiffs are not suing on a contract to which they are parties.

A single employee suing on his contract of employment to enforce his individual rights to recover pay or damages does not sue directly upon the collective agreement as a complete contract for his benefit since while the collective agreement may contain a contract between the union and the carrier it is not itself a contract of employment. Illinois Central R. Co. v. Moore, 5 Cir., 1940, 112 F.2d 959 reversing D.C., 24 F.Supp. 731, reversed on other grounds 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089. In Moore's Federal Practice, 2nd Ed., page 3443, Professor Moore states:

> "There is no jural relationship between the members of a class; unlike for example the members of an unincorporated association they have taken no steps to create a legal relationship among themselves. They are not fellow travellers by agreement. The right or liability of each is distinct. The class is formed solely by the presence of a common question of law or fact."

It is asserted by the plaintiffs that the right of each individual claimant depends upon establishing the common or collective right of the class. The only basis of common relationship that appears from the amended complaint is that they are all operating employees of the defendant carrier who entered into a contract with the Brotherhood and to which these plaintiffs are not alleged to be parties but are asserted to have acquired the same rights as those represented by the Brotherhood. The court is of the opinion the joinder is not for the purpose of enforcing a common right acquired by contract but to enforce an individual right accruing by virtue of the ordinary employment relationship. While it may be true that the rights and duties incurred under the contract between the Brotherhood and the railroad will accrue to these plaintiffs as to standards of employment, their rights thereunder are not joint or common rights with those who are members of the Brotherhood or even with each other. Their rights are separate, do not arise under the collective bargaining contract, and the class is form-

ed solely by the presence of a common question of fact or law relating to the nature of the rights and duties assumed under individual contracts of employment.

Since there appears in the complaint an allegation that plaintiffs do not know the amount of damages based on work lost and ask that defendant present an accounting of transfer work, it appears feasible to determine the individual amounts in controversy at this time. If they do not exceed $3000, the defendant's motion to dismiss must be sustained.

Being a "spurious" class suit, the Brotherhood is not an indispensable party since relief can be granted these plaintiffs without its joinder. Plaintiffs have made a motion to make the Brotherhood a party to this action, but the above ruling makes such a motion unnecessary.

Counsel should prepare an order within 10 days not inconsistent with the above rulings.