## ASSOCIATION OF WESTINGHOUSE SALARIED EMPLOYEES et al. v. WESTINGHOUSE ELECTRIC CORP.

### Civ. A. 10043.

United States District Court
W. D. Pennsylvania.

Oct. 2, 1952.

Albert C. Shapira, Pittsburgh, Pa., for plaintiff.

Mahlon E. Lewis, Pittsburgh, Pa., for defendant.

MARSH, District Judge.

Plaintiff is an unincorporated association and the collective bargaining representative for certain salaried employees of Westinghouse Electric Corporation, the defendant, at the latter's East Pittsburgh and Homewood, Pennsylvania, plants.

On November 19, 1951, plaintiff association filed a complaint to which was attached the collective bargaining agreement effective between the parties as of November 1, 1950.. The complaint alleges that under the terms of this agreement the defendant is obligated "to pay all of the employees [represented by the plaintiff] * * * their full monthly salary for the month of April, 1951, regardless of whether or not such employees missed a day's work during said month, * *. *"; that the defendant refused to pay not less than 4,000 of said employees their full monthly salaries "having deducted therefrom a proportionate amount attributable to absence from work on April 3, 1951"; and that the aggregate amount due and unpaid is not less than $45,000. Plaintiff prayed for judgment against the defendant corporation in that amount with interest and costs.

Jurisdiction is stated to be under Section 301 of Title III of the Labor Management Relations Act of June 23, 1947, 29 U.S.C.A. § 185.

The defendant filed a motion to dismiss on the following grounds: (1) that the plaintiff is not the real party in interest within the meaning of Rule 17, F.R.C.P., 28 U.S.C.A., and is therefore not a proper party plaintiff; (2) that the court lacks jurisdiction over the subject matter; (3) that the complaint fails to state a claim against the defendant upon which relief can be granted.

On the day fixed for hearing on the motion, the plaintiff filed a "First Amended Complaint," and the defendant renewed its motion to dismiss for the same reasons.

The amended complaint is substantially different from the original complaint. First, it states as an additional basis for jurisdiction the "Declaratory Judgment provisions of the Judicial Code, 28 United

States Code, Sections 2201 and 2202." Second, the plaintiff association in the amended complaint has added that it brings the action "in behalf of the individuals in interest whom it represents" as well as for itself "individually." It is alleged that the plaintiff is the collective bargaining agent for not less than 5,000 salaried employees at the defendant's plants aforesaid, engaged in an industry "affecting commerce," and that defendant failed and refused to pay not less than 4,000 of these employees their full monthly salaries by deducting a proportionate amount because of their absence from work on April 3, 1951. Third, in addition to averring a breach of the bargaining contract, it asserts that the defendant's failure and refusal to pay as aforesaid was in violation of the provisions of certain instruments, attached as exhibits, which were supplemental to and incorporated into the bargaining contract. Fourth, instead of asking judgment in favor of the association for $45,000 as set forth in the original complaint, it requests a judgment

> "* * * against Defendant and in favor of Plaintiff interpreting the aforesaid contract and declaring the rights of the parties thereunder * * *; and to compel the Defendant to make an Accounting setting forth the individual names and amounts of unpaid salaries * * *; and to enter judgment against the Defendant and in favor of the individual employees set forth in paragraph 21 hereof, for the unpaid amount of their salaries, for the month of April 1951, together with interest from April 30, 1951, costs, and a reasonable attorney's fee."

The not less than 4,000 employees, allegedly absent from work on April 3, 1951, were not joined as parties plaintiff or named in the complaint.

■ The defendant contends that the court does not have jurisdiction because these claims arise from "the individual employment contract rather than from the Collective Bargaining Contract," and that Section 301(a) of the Taft-Hartley Law gives jurisdiction to a federal court only in the event that the contract in suit was entered into between the employer and the labor organization as distinguished from an individual contract of hiring entered into between the employer and the individual employee. Defendant cites Milk Wagon Drivers Union, etc. v. Associated Milk Dealers, Inc., D.C.N.D.Ill.1941, 42 F.Supp. 584 and Joint Council Dining Car Employees, etc. v. New York Cent. R. Co., D.C. N.D.Ill.1946, 7 F.R.D. 376, in support of this theory. In the opinion of the court, this contention fails because the complaint under consideration is based exclusively upon the collective bargaining contract between the association and the corporation and not upon the contracts of hiring between the corporation and the individual employees.

We think that the situation sub judice is ruled by the case of American Federation of Labor v. Western Union Telegraph Co., 6 Cir., 1950, 179 F.2d 535. There the labor organization brought suit against the company upon a collective bargaining agreement which provided that a prior existing company pension plan should remain in full force and effect. The complaint alleged that the company refused to pay one Mae Hart, a retired employee, the pension to which she was entitled by the terms of the pension plan. It was held that the federal court had jurisdiction under the Taft-Hartley Law, § 301(a), and, under the Declaratory Judgment Act, the company could be compelled to pay the pension to Mae Hart and to other retired employees similarly situated.[1] The court remanded the case to the district court for trial on the merits. We are unable to distinguish the instant case in principle from that precedent. See also Local 937, etc., v. Royal Typewriter Co., D.C.Conn.1949, 88 F.Supp.

---

1. Specific enforcement against the employer defendant does not seem to be prohibited by the Norris-LaGuardia Act, 29 U.S.C.A. §§ 52, 101 et seq. Cf. Textile Workers Union of America, C. I. O. v. Aleo Mfg. Co., D.C.M.D.N.C., 1950, 94 F.Supp. 626, where the court held that the Norris-LaGuardia Act did not prevent the issuance of a mandatory injunction requiring employer to perform its collective bargaining agreement.

669;[2] United Shoe Workers of America v. Le Danne Footwear, Inc., D.C.Mass. 1949, 83 F.Supp. 714. Therefore, we are constrained to deny the first two reasons advanced in the motion to dismiss as being without merit.

We assume, then, in considering the third reason to dismiss, that we have jurisdiction under Section 301(a) of the Taft-Hartley Law to construe the collective bargaining agreement here before us, and under the Declaratory Judgment Act to enforce the rights of the employees as they appear from its terms and provisions. It thus becomes necessary to examine this agreement in order to determine whether the complaint states a claim upon which relief can be granted.

■ The bargaining contract itself, which was dated November 1, 1950, and which appears as Exhibit "A" in both the original complaint and the amended complaint, does not in our opinion contain any covenant on the part of the corporation to pay its employees for voluntary absences. This conclusion might be sufficient to dismiss the complaint on the authority of Bakery & Confectionery Workers I. U. v. National Biscuit Co., 3 Cir., 1949, 177 F.2d 684.[3] But plaintiff contends that certain directions and interpretations contained in Exhibit "F", attached to the amended complaint, were incorporated into the 1950 bargaining contract, and that these directions and interpretations illustrate an intention and purpose of the corporation to pay employees for voluntary absences and were sufficient to impose upon it a contractual obligation to do so.

Exhibit "F" is entitled:

"Westinghouse Electric Corporation
Manual of Accounting and Industrial Relations Manual

| | | |
|---|---|---|
| | Part 6—Industrial Relations Policies and | Section 2 |
| July 1949 | Accounting Procedures | Division 1G2" |

Attached to this exhibit are certain examples and explanatory "Addenda" bearing the date of July, 1947. The sentence relied on appears in the "Addenda" as follows:

"9. Salary for the basic work week (less furlough time if any) shall be paid whether or not all voluntary absence has been made up."

Another sentence in the "Addenda" is as follows:

"1. Voluntary absences are indicated as time worked only for the number of scheduled daily hours less hours worked on Saturdays and Sundays which are not holidays."

These directions cannot be construed as constituting a covenant between the plaintiff and the defendant that the latter shall pay its employees full salaries for voluntary absences, or, to put it another way, for days not worked regardless of the cause of absences. Expressly, they are instructions by the corporation to its accountants for determining the number of hours per week an employee worked and nothing more. The examples are entitled "Determination of Hours Worked," and the instructions imply that hours lost by voluntary absence shall be made up.

Moreover, contrary to the allegations of the complaint and the contention of plaintiff, these directions and the examples to which they refer, (all contained in Exhibit "F"), have not been "adopted and incorporated as a necessary and integral part of said contract" of 1950, "by reason and virtue of the provisions of paragraph H of Section VI" thereof.

Section VI, paragraph H(1)[4] by its terms

2. In that case, as here, it seems that the union brought suit on behalf of employees who, we are reliably advised, were not identified by name as parties plaintiff in the caption and complaint.

3. The Court of Appeals affirmed the District Court, 78 F.Supp. 517, which had dismissed the action after construing the bargaining contract adversely to the contention of the union.

4. Sections referred to are in the bargaining agreement, Exhibit "A", unless otherwise indicated.

is prospective in operation and in any event does not provide that instructions prepared by the corporation in 1947, 1949, or at any other time, shall be adopted and incorporated into the contract of 1950.

Plaintiff also argues that if the bargaining contract does not specifically provide for payment for voluntary absences, it is ambiguous and should be interpreted by the construction placed upon it by the corporation as disclosed by the above quoted sentences in Exhibit "F". It seems to us that the contract becomes ambiguous solely by reason of the arguments and assertions of the plaintiff on matters dehors the contract. In our opinion the terms of the contract between the corporation and the union are pellucid concerning what type of absence shall be paid absences and what type shall not be paid. Payment for voluntary absences simply was not a subject of agreement between the union and the corporation in the 1950 contract and its supplements.[5]

█ Neither can the omitted subject be supplied by alleged intentions gathered from custom, generosity or prior policy on the part of the corporation. Payment for work which is not performed is an important subject which calls for settlement by explicit agreement and not by judicial construction. Cf. Bakery & Confectionery Workers I. U. v. National Biscuit Co., supra. The parties themselves recognized the importance because they painstakingly inserted into the contract by way of specific terms the manner in which monthly salaries for all types of salaried employees represented by the association should be determined and paid.

It was provided in Section VI A(2) and Exhibit "C" that these salaries should be fixed between minimum and maximum rate ranges. The object and procedure for review of these salaries was prescribed in Section VI G. But it is also very plain that the parties did not contemplate that the rates of the monthly salaries should be rigid and inflexible whether the employee works or does not work—indeed the implications are very much to the contrary. The contract sets forth detailed provisions for adding to the salary rate by extra payment for hourly overtime, Section XI, in excess of a 40 hour week based on an 8 hour day, from Monday to Friday, inclusive, Section VII; and by payment of a night turn bonus, Section VI E. Other provisions require deductions from the salary rate in case of furlough, Section IX 9, or leave of absence, Section VIII. The contract specifically requires the corporation to pay for days absent on account of jury duty, Section X 1; vacations, Section XIII; certain union activities, Section XVI B; extended illness or disability, Exhibit "D".

The fact that the parties included these specific provisions *in the contract* negates plaintiff's contention that the corporation from unclear extra-contractual considerations, instructions, and interpretations intended to obligate itself to pay for voluntary absences of one day. There would be no point in providing expressly for payment for certain absences if all were to be compensated.

█ One other matter remains to be considered and that is whether under the allegations of the amended complaint the

---

5. In this connection it is to be observed that this contract states at Section XVII, 3: "* * * that all agreements arrived at by the parties * * * are set forth in this Agreement * * *." And in Section III, 2, it is stated: "* * * that it is the responsibility and right of the Company to maintain discipline and efficiency, and agrees that Management shall have the *freedom of action* necessary to discharge its responsibility for the successful operation of the Company. These responsibilities and rights of the Company do not in any way limit any other *specific provision* of this Agreement [emphasis added]." To say the least, it is doubtful if a successful and efficient operation could be maintained by establishing a policy wherein over 4,000 employees shall be paid for those days they choose not to work. The contract gives the corporation the right to enforce attendance as its discretion dictates except as limited by a specific provision dealing with this subject.

plaintiff is entitled to relief. The amended complaint avers that on April 3, 1951, none of the employees concerned was absent on account of "furlough" or "leave of absence," but it does not assert that the approximately 4,000 employees were absent on April 3 because of some reason covered by a specific provision of the bargaining contract which requires the corporation to pay them for that day. We think that in order to state a cause of action it is incumbent upon plaintiff to bring each of the absent employees within the terms of the bargaining contract or its supplements and affirmatively and plainly aver that each was absent because of a reason requiring payment, such as sickness,[6] and that the corporation refused to pay the increment of salary representing that day's absence. This the plaintiff has not done. The averment that plaintiff "has no actual records of * * * which of said employees were absent because of illness or disability" cannot be construed, as plaintiff's Supplemental Brief (at page 9) claims, as an affirmative averment that the not less than 4,000 employees were absent on April 3 because of sickness or disability.

Therefore, in the absence of affirmative averments of the specific causes of the absences of the employees on April 3, it may be assumed, as seems to be understood by both sides, that the approximately 4,000 absences were voluntary. As shown heretofore, it was not provided in the bargaining contract itself that employees should be paid for voluntary absences from work, but that the implications were to the contrary, and that it was not the intention or purpose of the corporation to obligate itself to that extent.

Accordingly, the complaint will be dismissed without prejudice to the plaintiff association by way of amendment to set forth a cause of action upon which relief can be granted.

---

6. Plaintiff's counsel in his Supplemental Brief (page 8) argues that Exhibit "D", paragraph 1, provides "that in all cases of sickness for one day, no deduction from monthly salary is to be made." This construction we accept *arguendo* only, because to us the language seems to provide that certain weekly or monthly increments of salary will be paid to an employee who is absent for *extended* periods of time due to sickness or disability.