## ASSOCIATION OF WESTINGHOUSE SALARIED EMPLOYEES

v.

## WESTINGHOUSE ELECTRIC CORP.

### No. 10954.

United States Court of Appeals, Third Circuit.

Argued April 23, 1953.

Reargued Dec. 22, 1953.

Decided Jan. 28, 1954.

**624**

Albert C. Shapira, Pittsburgh, Pa., for appellant.

Mahlon E. Lewis, Pittsburgh, Pa., (Loyal H. Gregg, Pittsburgh, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and MARIS, GOODRICH, McLAUGHLIN, KALODNER, STALEY and HASTIE, Circuit Judges.

STALEY, Circuit Judge.

Plaintiff appeals from the district court's dismissal of its complaint. We assume the truth of all the factual allegations, which are as follows:

Plaintiff, an unincorporated labor organization, is the bargaining representative of a large group of defendant's salaried employees. Some four thousand of these employees did not work on a certain day in April of 1951, and, as a consequence, defendant did not pay them for that day. Asserting that defendant's failure to pay was violative of the collective bargaining agreement then in effect between it and defendant, plaintiff seeks, on its amended complaint, a declaratory judgment as to the rights of the parties under the agreement, an accounting to determine the amounts of the allegedly wrongfully withheld salaries, and a judgment running in favor of the individual employees found to be entitled thereto. Defendant presented three grounds for its motion to dismiss: lack of jurisdiction over the subject matter; wrong party plaintiff; and failure of the complaint to state a claim upon which relief could be granted. The district court decided the first two contentions in plaintiff's favor but dismissed the complaint on the basis of the third.[1] We agree with that result but think that the dismissal should be put upon the ground of lack of federal jurisdiction over the subject matter.

There is no diversity jurisdiction here. Plaintiff relies solely upon the grant of federal power in Section 301(a) of the Labor Management Relations Act:

"Suits by and against labor organizations—Venue, amount, and citizenship

"(a) Suits for violation of contracts between an employer and a

---

1. The opinion of the district court appears at D.C.W.D.Pa.1952, 107 F.Supp. 692.

The dismissal was without prejudice to plaintiff's amendment of the complaint to

labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 61 Stat. 156 (1947), 29 U.S.C.A. § 185(a).

It is plaintiff's theory that the proper construction of the collective bargaining contract requires that defendant pay the salaried employees regardless of the fact that they did not work and that that provision, though it is in a contract to which only the union and the company were parties, runs to the benefit of each individual salaried employee in the bargaining unit. Since the union entered into the collective bargaining contract for the benefit of those whom it represents, the argument continues, it may sue in federal court by virtue of Rule 17(a) [2] of the Federal Rules of Civil Procedure, 28 U.S.C.A., or by virtue of Section 301(b) [3] of the Labor Management Relations Act.

Plaintiff goes too fast, however. Skipping rather lightly over the question of the power of the federal court to act in this case, it expends its strength on the issue of proper party plaintiff. Plaintiff might well be the proper party to assert the present claim (which we do not decide) but nevertheless be unable to find a federal forum with power to hear it. A correct solution of this problem, therefore, requires a construction of Section 301(a) and some fundamental probing into the reciprocal rights and duties, and the sources thereof, of the three groups concerned in a collective bargaining contract.

Section 301(a) is a grant of federal-question jurisdiction and thus creates a federal, substantive right. Shirley-Herman Co. v. International Hod Carriers, 2 Cir., 1950, 182 F.2d 806, 17 A.L.R.2d 609; 3 Moore's Federal Practice § 17.25 (2d ed. 1948). The contract allegedly violated, however, must be one between an employer and a labor organization. Shirley-Herman Co. v. International Hod Carriers, supra. That is, we construe the "between" clauses as modifying "contracts" rather than "suits." [4]

We now turn to an analysis of what happens when a union enters into a collective bargaining contract with an employer and the latter then enters into a contract of hire with an individual employee, in order to determine whether the right here asserted arises from a violation of the collective contract, for if it does not, there is no jurisdiction to entertain this suit. Plaintiff admits that the rights in dispute are the claims of individual employees to their salaries. It argues, however, that these individual employees whom it represents are third party beneficiaries of the collective bargaining contract between it and the employer. Thus, though not parties to that contract, it would follow that their rights arise out of it, and the present claims would be based upon a violation of a contract between an employer and a labor organization. Hence, federal jurisdiction under Section 301(a).

We concede that the matter is not free from difficulty, but we think plaintiff's analysis is too superficial. The cases explaining the tripartite relations

---

set forth a cause of action upon which relief could be granted.

**2.** "Every action shall be prosecuted in the name of the real party in interest; but * * * a party with whom or in whose name a contract has been made for the benefit of another * * * may sue in his own name without joining with him the party for whose benefit the action is brought * * *."

**3.** " * * * Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. * * * " 61 Stat. 156 (1947), 29 U.S. C.A. § 185(b).

**4.** But see the contrary construction suggested in Note, 57 Yale L.J. 630, 637 (1948), and in 1951, 17 A.L.R.2d 614, 619.

raised by a collective bargaining contract are quite conflicting, but examination reveals that four rather well defined theories emerge. At one time the view was accepted that a collective bargaining contract was binding only in morals.[5] No more need be said about that. A second and more generally accepted view is that the collective agreement establishes a usage in the plant or industry and that the individual hiring contracts are made with that usage in mind, thus incorporating within the latter the terms of the former.[6] Under this view whatever rights and duties arise are created by the individual contracts of hire. A third theory is that the union, in contracting with the employer, acts as agent for those whom it represents.[7] Thus, the rights and duties arise out of the collective bargaining contract. Another analysis holds that the union, in contracting with the employer does so for the benefit of those employees whom it represents and that they are thus third party beneficiaries of the terms of the collective bargaining contract.[8] This is the theory pressed upon us here.

None of the above theories, however, presents an adequate explanation of the collective bargaining picture,[9] although certain features of each are valid. We prefer an eclectic theory. It is perfectly obvious that the collective contract between the union and the employer is not a contract of hire.[10] "* * * [N]o one has a job by reason of it and no obligation to any individual ordinarily comes into existence from it alone." J. I. Case Co. v. National Labor Relations Board, 1944, 321 U.S. 332, 335, 64 S.Ct. 576, 579, 88 L.Ed. 762. The collective contract between the union and the employer establishes the rates of pay, wages, hours, and conditions to which the employer must adhere in concluding contracts of hire with individual employees. Indeed, Mr. Justice Jackson, in the J. I. Case case, supra, likens the collective contract to tariffs established by a carrier, standard provisions prescribed for insurance policies, or utility sched-

5. Teller, Labor Disputes and Collective Bargaining § 157 (1940).

6. Harrison v. Pullman Co., 8 Cir., 1934, 68 F.2d 826; Yazoo & M. V. R. Co. v. Webb, 5 Cir., 1933, 64 F.2d 902; Teller, op. cit. supra, note 5, § 159; 2 Williston, Contracts § 379A (rev. ed. 1936).

7. Teller, op. cit. supra, note 5, § 167 and cases there cited.

8. Teller, op. cit. supra, note 5, § 168; 2 Williston, op. cit. supra, note 6.

9. The usage theory would seem to be unrealistic in that it must view the collective agreement as not a contract at all. Hence, the union, representing the collective force of the employees, would have no rights. Moreover, how notorious must the "usage" be in order that it become part of the employment contract? Must the employee actually know of its existence? Cf. United States Daily Publishing Corp. v. Nichols, 1929, 59 App.D.C. 34, 32 F.2d 834.

The agency theory is unable to explain how an employee who is not a member of the union acquires any rights under the collective contract.

Under the third party beneficiary theory, the employee need not show that he contracted with reference to the collective contract; nor need the employee be identified at the time of the collective contract. But that theory leaves the employer without recourse against the employee, since the latter, the beneficiary, had made no promises. Furthermore, how does the third party beneficiary theory have any effect in jurisdictions which do not follow the rule of Lawrence v. Fox, 1859, 20 N.Y. 268?

The cases illustrating the various theories and results are collected in 1951, 18 A.L.R.2d 352 and 1935, 95 A.L.R. 10.

10. In litigation under the United States Arbitration Act, 9 U.S.C. § 1 et seq., collective bargaining contracts have been held to be "contracts of employment." Tenney Engineering, Inc., v. United Electrical R. & M. Workers, 3 Cir., 1953, 207 F.2d 450; Pennsylvania Greyhound Lines, Inc., v. Amalgamated Ass'n, 3 Cir., 1952, 193 F.2d 327; Amalgamated Ass'n v. Pennsylvania Greyhound Lines, Inc., 3 Cir., 1951, 192 F.2d 310; International Union v. Colonial Hardwood Flooring Co., 4 Cir., 1948, 168 F.2d 33; Gatliff Coal Co. v. Cox, 6 Cir., 1944, 142 F.2d 876. That definition, however, was put upon policy reasons peculiar to the Arbitration Act which have no place in the present setting.

ules of rates and rules for service. These do not of themselves create rights or duties between carrier, insurer, or utility and shipper, insured, or customer. Such rights and duties arise only when carrier and shipper, insurer and insured, utility and customer enter into contracts with each other. So it is in the shop. The collective contract plus the National Labor Relations Act binds the employer to include in the contract of hire which he may conclude with each individual employee in the bargaining unit the precise terms and conditions that have been set up by it. By this we do not mean to follow the usage theory of the collective bargain. Under familiar principles of contract law, the parties must know or have reason to know of the usage and deal with reference to it in order that its terms may become part of their contract. Restatement, Contracts § 247, comment *b* (1932). Such a requirement has little place in the elaborate statutory scheme which presently rules labor relations. The bargaining representative is made the sole agent for the unit and represents not only its members but all employees in that unit whether members of the union or not. The terms of the collective contract thus become part of the individual contract of employment, not because of consensual acts of the employer and employee, but because the law says so no matter how those parties may feel about the matter J. I. Case Co. v. National Labor Relations Board, supra 331 U.S. at page 336, 64 S.Ct. 576. Applying those principles to our case and assuming that plaintiff's construction of the collective cont..ct is correct, we see that by that contract and the labor relations Act defendant became bound to the plaintiff to include as a term of each individual contract of hire a promise to pay the salaried employee for the type of absence involved here. But not until an individual entered into a contract of hire with defendant did the latter become bound to pay that individual under such circumstances, and, if defendant failed to so pay, it breached, not its collective contract with the union, but its contract of hire with that individual employee. Joint Council Dining Car Employees v. New York Central R. R., D.C.N.D.Ill. 1946, 7 F.R.D. 376; Milk Wagon Drivers Union v. Associated Milk Dealers, D.C. N.D.Ill.1941, 42 F.Supp. 584. See also Knudsen v. Chicago & N. W. Ry., D.C. N.D.Ill.1952, 106 F.Supp. 48, 52. Consequently, we think that, if there was a violation of contract here, it was a violation of the individual employment contract and, thus, there is no federal jurisdiction since Section 301(a) cannot be invoked.

Plaintiff tells us that the third party beneficiary theory is the modern one, citing the J. I. Case case, supra, among others. It is true that the Court wrote at 321 U.S. 332, 336, 64 S.Ct. 576, 579, "But, however engaged, an employee becomes entitled by virtue of the Labor Relations Act somewhat as a third party beneficiary to all benefits of the collective trade agreement, even if on his own he would yield to less favorable terms." However, Mr. Justice Jackson there also pointed out very clearly that there are two contracts involved, the collective one between union and employer and the individual one between employer and employee, and that there is an obvious difference between them in both concept and function. We think the J. I. Case case means that the individual employee is a third party beneficiary of the collective bargaining contract only in the sense that the collective force of all employees in the unit has been brought to bear upon the employer to hammer out a bargain with him, the terms of which, by virtue of the statutory mandate, must be included in the employee's contract of hire, but that that provision of the collective contract specifying rates of pay ripens into a legal right only under the individual contract of hire and only because of the individual employee's labor. We think that this recognizes the functional difference between a collective bargaining contract and a contract to buy and sell a horse, and yet remains reasonably consistent

with accepted doctrine. Indeed, it could hardly be seriously contended that the collective contract can be fitted into traditional third party beneficiary standards. To begin with, there are some provisions of the collective contract which run only to the benefit of the union and could not run to the benefit of the individual employee. Check-off provisions are probably the outstanding example. Furthermore, the consideration for the employer's duty to pay wages to any individual employee is furnished by the latter, the would-be beneficiary, rather than by the union, the would-be promisee.

The collective contract is made up of a whole complex of clauses which deal with nearly every phenomenon under the industrial sun. The ordinary collective contract may contain detailed provisions relating to union shop or maintenance of membership, hours of work, wages, overtime, holidays, vacations, shift scheduling, leaves of absence, seniority, promotion, transfer, demotion, layoff, discharge, discipline, grievance procedure, arbitration, strikes, lockouts, runaway shop, and safety conditions. The collective contract in this record includes many of those terms. We think that a realistic view of the problem requires that analysis be directed to the possible rights and duties arising out of the specific term of the collective contract that is in dispute rather than attempting to categorize it as a whole. Considered as a whole, it is *sui generis* and simply will not fit into any of the traditional legal pigeonholes. The claim asserted here is the right to wages. The employer has a duty to pay wages only because the individual employee performed his work, not because the union promised to refrain from certain acts.

On the other hand, it may well be that there are terms of the collective contract which may be of benefit to the employee but this only incidental to a collective benefit, as opposed to the direct benefit to the individual of his right to his wages. By way of illustration of duties imposed upon the employer by virtue of the collective contract itself and correlative rights running in favor of the collective group, *i. e.*, the union, with incidental benefit to the individual, may be mentioned provisions relating to lockout, union shop, runaway shop, arbitration, and safety conditions. We think it is the union's promises which furnish consideration for those employer promises and, thus, those rights arise out of the collective contract and, therefore, run in favor of the union.[11]

Plaintiff leans heavily upon American Federation of Labor v. Western Union Telegraph Co., 6 Cir., 1950, 179 F.2d 535. See also Food & Service Trades Council v. Retail Associates, Inc., D.C. N.D.Ohio 1953, 115 F.Supp. 221. In the former case, the Sixth Circuit held that there was federal-question jurisdiction under Section 301(a) to entertain a suit by the union for the company's refusal to pay a pension to one of its employees. To the extent that that case holds that an individual employee's right to a pension, which is simply another form of wages, arises out of the collective contract rather than the hiring contract, we are, with deference, forced to disagree.

■ There are cases under Section 301(a) where a union was allowed to assert a claim somewhat similar to the present one, *i. e.*, one which we would consider as arising out of the individual contract of hire.[12] In all but two of those cited, however, the question of

---

11. MacKay v. Loew's, Inc., 9 Cir., 182 F.2d 170, 18 A.L.R.2d 348, certiorari denied, 1950, 340 U.S. 828, 71 S.Ct. 65, 95 L.Ed. 608; Dubinsky v. Blue Dale Dress Co., 1936, 162 Misc. 177, 292 N.Y.S. 898. See also Textile Workers Union v. American Thread Co., D.C.D.Mass.1953, 113 F. Supp. 137.

12. Mercury Oil Refining Co. v. Oil Workers International Union, 10 Cir., 1951, 187 F.2d 980 (the employee was a co-plaintiff); Bakery & Confectionery Workers' International Union v. National Biscuit Co., 3 Cir., 1949, 177 F.2d 684; Local 793 UAW—CIO v. Auto Specialties Mfg. Co., D.C.W.D.Mich.1951. 15 F.R.D. 261;

federal jurisdiction was passed *sub silentio,* so that they are not binding precedent on the issue of jurisdiction. United States v. L. A. Tucker Truck Lines, Inc., 1952, 344 U.S. 33, 38, 73 S.Ct. 67, 97 L.Ed. 54. In the other two cases there were mere *ipse dixit* statements concerning federal jurisdiction, and in the case in the Tenth Circuit the employee was a co-plaintiff who could rely on his individual contract of hire.

It may not be amiss to point out some of the serious questions which might be raised by a contrary decision on this issue. Plaintiff admits that the rights asserted are the individual rights of some four thousand employees. None of them are joined or even named. Indeed, part of the relief sought is the names of those entitled to payment. In such circumstances, how should the doctrine of res judicata be applied? If plaintiff should prevail on the merits, what of an employee in the unit who may have been inadvertently omitted from the reckoning? Is he barred? Is defendant safe in paying the judgment in favor of plaintiff? If plaintiff should lose on the merits, as it did in the district court, are all employees in the unit barred?[13] Plaintiff argues that the employee is a third party beneficiary of the collective contract. Plaintiff is not asserting its right as alleged promisee to that contract, however, but, in a repre-sentative capacity, asserts the rights of the alleged beneficiaries. Thus, it seems they would be barred at all events, since the rules of res judicata as applied to the *cestuis* of representatives suits would apply.[14] Since the rights asserted here are no longer executory, in that the employees have performed the work which raised in defendant the duty to pay, we think it a factor to be considered that the employees might be thus cut off.

A further problem is created by the effect of those cases which have said that the union is the only proper party to any suit under Section 301(a).[15] If those cases are right, then the federal courts are closed to suits by employees to recover wages. This would make the union not only the exclusive agent to negotiate a contract but also the exclusive agent to litigate the individual rights of all those whom it represents under the labor relations Act, whether members of the union or not. We think that if Congress had intended such revolutionary changes, it would have said so in so many words. Couple this with the holding by the Supreme Court of New York that Section 301(a) shows Congressional intent to preempt the field relating to collective bargaining contracts in interstate commerce, Fitzgerald v. Dictograph Products, Inc., 28 LRRM 2611 (1951),[16] and the individual

---

United Automobile Workers Amalgamated Local No. 286 v. Wilson Athletic Goods Mfg. Co., D.C.N.D.Ill.1950, 119 F.Supp. 948; Local 937 etc., v. Royal Typewriter Co., D.C.D.Conn.1949, 88 F. Supp. 669; United Shoe Workers v. Le Danne Footwear, D.C.D.Mass.1949, 83 F. Supp. 714.

13. See Rock Drilling etc. Local Union No. 17 v. Mason & Hangar Co., D.C.S.D.N.Y. 1950, 90 F.Supp. 539.

14. Restatement, Judgments § 85(1). (1942).

15. United Protective Workers of America v. Ford Motor Co., 7 Cir., 1952, 194 F.2d 997; Ketcher v. Sheet Metal Workers' International Ass'n, D.C.E.D.Ark.1953, 115 F.Supp. 802, 809; Local 793 WAW—CIO v. Auto Specialties Mfg. Co., D.C. W.D.Mich.1951, 15 F.R.D. 261; United Automobile Workers Amalgamated Local

No. 286 v. Wilson Athletic Goods Mfg. Co., D.C.N.D.Ill.1950, 119 F.Supp. 948; Schatte v. International Alliance, D.C.S. D.Cal.1949, 84 F.Supp. 669, 673, affirmed on other grounds, 9 Cir., 182 F.2d 158, certiorari denied, 1950, 340 U.S. 827, 71 S.Ct. 64, 95 L.Ed. 608.

16. See also Fay v. American Cystoscope Makers, Inc., D.C.S.D.N.Y.1951, 98 F. Supp. 278, 281.

On the question whether Section 301 has made the federal courts the exclusive forum to determine cases involving collective bargaining contracts between employers and labor organizations representing employees in an industry affecting commerce, it is significant that in the tort section of the Labor Management Relations Act, Section 303, in the jurisdictional grant, Congress said that the party injured by the proscribed conduct "may sue therefor in any district court of the

employee is completely out of court. Thus would be taken away the right of the employee to his salary. Everybody admits that it is his individual right and not that of the union. To say that he has a right to his salary but no remedy to enforce it is a judicial nightmare. " 'Legal obligations that exist but cannot be enforced are ghosts that are seen in the law but that are elusive to the grasp.' " De La Rama Steamship Co. v. United States, 1953, 344 U.S. 386, 390, 73 S.Ct. 381, 383, 97 L.Ed. 422. This would raise such serious doubts as to the constitutionality of Section 301 (a), Lynch v. United States, 1934, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434, as to require us to avoid such construction. Interstate Commerce Commission v. Oregon-Washington R. R. & Navigation Co., 1933, 288 U.S. 14, 40, 53 S.Ct. 266, 77 L.Ed. 588. United States v. Shreveport Grain & Elevator Co., 1932, 287 U.S. 77, 82, 53 S.Ct. 42, 77 L.Ed. 175.

In summary, we hold that the employer's duty to pay a certain rate arises out of the collective bargaining contract plus the sanctions of the labor relations Act. The duty to pay a particular employee wages in the sum resulting from such rate arises out of the individual contract of hire. The latter is the duty alleged here, and, therefore, Section 301(a) is not involved since there is no violation of a contract between an employer and a labor organization. Consequently, we have no jurisdiction over the subject matter. For the same reason the prayer for declaratory relief as to the meaning of this term of the collective contract must meet a like fate.

The order of the district court will be vacated, and the complaint will be dismissed for lack of jurisdiction.

HASTIE, Circuit Judge (dissenting).

The complaint in this case was dismissed in the district court on the de-

fendant's motion which advanced three contentions; (1) that the matter in controversy was not within federal jurisdiction, (2) that the complaining labor union was not the proper party to maintain the suit, and (3) that the claim on its face was without merit. The district court thought that the third objection, and only that one, was meritorious. This court now decides that the first objection was well taken and accordingly vacates the judgment and orders the cause dismissed for lack of federal jurisdiction. However, I think the district court ruled correctly on all three points raised by the motion and that its judgment should be affirmed.

The first question is whether Section 301(a) of the Labor-Management-Relations Act, 29 U.S.C.A. § 185(a), which confers upon federal district courts jurisdiction of "suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce * * *." is applicable to this controversy. This action is ex contractu. The adequate involvement of commerce is unquestioned, but the rights asserted as the basis of relief are beneficially the alleged several rights of a great number of defendant's employees to receive a day's pay for a day on which they did not work. The company argues that its refusal to pay these employees, if actionable at all, must be attacked as a breach of the individual contracts of hire, a matter beyond federal cognizance. Cf. Christiansen v. Local 680, 1940, 126 N.J.Eq. 508, 10 A.2d 168. This court now accepts that reasoning, treating as decisive the undeniable fact that the obligation to pay any particular workman in accordance with the union contract depends upon his individual hiring as well as the collective bargain. I believe the court does not regard the time sequence of these contracts as consequential. I agree that this dual con-

United States * * * or in any other court having jurisdiction of the parties * * *." (Emphasis added.) § 303(b). There is no such choice of forums under Section 301, seemingly indicating that

Congress intended to preempt to the federal courts litigation on collective bargaining contracts. But see General Electric Co. v. International Union, 1953, 93 Ohio App. 139, 108 N.E.2d 211.

tracting shows that the individual workman can found a common law action for pay upon the terms of his employment without even attempting to make the matter one of federal cognizance under Section 301(a). But in the present circumstances I think the existence of this individual common law right does not prevent the refusal to pay from also being a violation of the collective bargaining agreement and, as such, within federal jurisdiction as extended by Section 301(a).

The union's complaint asserts that its collective bargaining contract with the defendant, as properly construed and mutually understood, obligates the employer to compensate its employees for the period of absence in suit. It is the union's position that, although the employment status of each individual arises out of his hiring, certain of his rights as an employee, including the right in suit, are the legal consequences of undertakings embodied in the collective bargaining contract as enforceable promises of the employer made to the union for the benefit of all who may be employees while the collective bargain remains in force. This reasoning reflects the analysis made by Mr. Justice Jackson in J. I. Case Co. v. National Labor Relations Board, 1944, 321 U.S. 332, 335–336, 64 S.Ct. 576, 579: "After the collective trade agreement is made, the individuals who shall benefit by it are identified by individual hirings. * * * But the terms of the employment already have been traded out. There is little left to individual agreement except the act of hiring. * * * The individual hiring contract is subsidiary to the terms of the trade agreement * * *." I think such analysis is realistic. In terms of the matter presented in this complaint, individual hiring is "subsidiary" to the collective agreement in which the parties addressed themselves to and "traded out" that term of employment which controls pay status on non-working days. Accordingly, it seems proper to say that the asserted right to relief

is so predicated upon a violation of the contract between employer and union that the controversy comes within federal jurisdiction as conferred by Section 301(a) of the Labor-Management-Relations Act. American Federation of Labor v. Western Union Telegraph Co., 6 Cir., 1950, 179 F.2d 535; Bakery & Confectionery Workers Union, Local No. 492 v. National Biscuit Co., 3 Cir., 1949, 177 F.2d 684; Mercury Oil Refining Co. v. Oil Workers International Union, 10 Cir., 1951, 187 F.2d 980.

My view of the first point makes it necessary that I consider the distinct, though related, question whether the union, without joining individual employees, is a proper party to assert and litigate the present claim. Section 301(a) gives the district court jurisdiction over violations of collective bargaining contracts but does not indicate who may sue on the various claims which may arise out of such contracts. The answer to that question must be found elsewhere.

The employer says the union alone cannot maintain this action because the rights asserted, even if they derive from the collective bargaining agreement, are beneficially the individual rights of the employees who were denied compensation. Cf. Milk Wagon Drivers Union, Local No. 753 v. Associated Milk Dealers, D.C.N.D.Ill. 1941, 42 F.Supp. 584. The union counters with the contention that Rule 17(a) of the Federal Rules of Civil Procedure and Section 301(b) of the Labor-Management-Relations Act enable it to sue alone to realize the benefits it has won for all the employees.

It seems to me that Rule 17(a) is relevant. That Rule explicitly states that "Every action shall be prosecuted in the name of the real party in interest; but * * * a party with whom or in whose name a contract has been made for the benefit of another, * * * may sue in his own name without joining with him the party for whose benefit the action is brought; * * * "

In a variety of situations this Federal Rule and its state prototypes[1] have served to enable the maker of a contract for the benefit of another to sue in his own name to vindicate the beneficiary's rights. See Valentine v. Powers, D.Neb. 1948, 85 F.Supp. 732; Linnemann v. Kirchner, 1920, 189 Iowa 336, 178 N.W. 899; Shellberg v. McMahon, 1916, 98 Kan. 46, 157 P. 268; Millers Nat. Ins. Co. v. Bunds, 1944, 158 Kan. 662, 149 P.2d 350, 153 A.L.R. 176. A union's effort to enforce the rights it has obtained for the shifting membership of a class it represents through a contract that it made in their interest seems a very appropriate occasion for such procedure. Local 793 UAW-CIO v. Auto Specialties Mfg. Co., D.C.Mich.1951, 15 F.R.D. 261; Local 937 UAW v. Royal Typewriter Co., Inc., D.C.D.Conn.1949, 88 F.Supp. 669; Cf. Amalgamated Meat Cutters and Butchers, Local 634 v. Safeway Stores, Inc., Denver Colo.Dist.Ct. 1949, 16 CCH Lab.Cas.Par. 65,044.

The opinion of the court quite properly points out that present professional views of the jural relationships which grow out of collective bargaining contracts are various and unsettled, and that in the circumstances an eclectic approach to the possibilities of the situation is warranted. But going at the problem this way it seems to me that the employer as promisor in the collective contract is in no position to complain that his promise is enforced by the one to whom it was given. And it seems entirely fair to the individual employee that Rule 17(a) be employed according to its tenor to permit his exclusive representative for the making of a contract for his benefit without his personal participation,[2] to proceed similarly on its own initiative to obtain for his benefit a judicial determination of the rights the contract gives him. In this type of statutory relationship and representative status the courts have taken care to protect the individual employees by imposing upon the union, quite apart from Rule 17(a), a strict and high fiduciary obligation of diligence and fairness in advancing the interests of all those it represents. Brotherhood of Railroad Trainmen v. Howard, 1952, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283; see Ford Motor Co. v. Huffman, 1953, 345 U.S. 330, 337, 338, 73 S.Ct. 681, 97 L.Ed. 1048.

If in this process the union should succeed in winning, as it sought here, a judicial determination establishing the alleged right of all employees under the collective bargaining contract to be paid for days of voluntary absence, the question would remain whether any money judgment could properly be rendered without joinder or intervention of individual beneficiaries. Some of the above cited cases go that far, treating the plaintiff maker of a third party beneficiary contract as a fiduciary who may obtain a money award for distribution among the beneficiaries. It is not necessary to pass upon that issue here because the district court rightly concluded that the contract in suit did not create such an obligation as the union asserts in this suit. And

1. Some states have provisions like the Federal Rule. Others approximate this language:

"Every action shall be prosecuted in the name of the real party in interest, but * * * a trustee of an express trust, * * * may sue without joining with him the person for whose benefit the action is prosecuted. A person with whom or in whose name a contract is made for the benefit of another is a trustee of an express trust within the meaning of this section." See 3 Moore, Federal Practice, 2d ed., 1371–72.

Whether expressed in the one form or the other, the result is the same: a person who enforces a contract made in his name for the benefit of another enforces rights belonging to another and, where allowed a money judgment, holds any proceeds recovered in a fiduciary capacity.

2. While neither party argues the point, the pleadings indicate to us that the union as the chosen bargaining representative of the employees concerned here is the exclusive statutory representative of the class for bargaining "in respect to rates of pay, wages, hours of employment, or other conditions of employment * * *." as provided in Section 9(a) of the National Labor Relations Act, as amended, 61 Stat. 143, 29 U.S.C.A. § 159(a).

since the majority does not reach this point at all, I express no opinion on the matter of necessary parties beyond saying that the union suing alone can obtain an effective declaration of the rights and obligations created by the collective bargaining contract, including any created for the benefit of the workmen as individuals.

Coming finally to the merits, I agree with the District Court that the facts alleged do not entitle the plaintiff or the employees it represents to relief. The complaint asserts that an obligation to compensate employees for the day in controversy when they were absent from work is imposed on defendant by the collective bargaining contract which it made with the union November 1, 1950. At the same time the complaint does not state why the employees were absent except that they were not "furloughed" or on "leave of absence", these being two situations of extended absence in which the contract makes it clear that an employee is not entitled to pay. Thus, it necessarily is the theory of the complaint that the contract requires that an employee, not on furlough or leave of absence, must be paid for every day when he voluntarily stays away from work, for whatever reason, just as if he were on the job.

But this claim is based on misconstruction of the contract. That instrument formally establishes a standard basic forty hour, five day work week upon which rates of pay are determined. It also contains a comprehensive enumeration of the absences, both normal and unusual, which the employer must credit toward the forty hour work week just as if the employee were working. Specifically, for employees who have worked more than one year the contract provides annual vacation of two or three weeks without loss of pay. Certain holidays are similarly to be credited as work time. Absences for jury duty and for certain union activities are authorized without loss of pay. Sick leave is covered by a separate written contract. Thus I think it clear that what the parties intended and accomplished was to cover by specific agreement each type of absence which should be compensable. Accordingly, there is no provision whatever stipulating any particular circumstance in which absence for a single day or any other short period is not compensable. None need be stated since all compensable absences are enumerated. The references to extended absence without pay in the nature of temporary reduction of force, called "furlough", and to extended absence without pay at the employee's own request called "leave of absence", are made in connection with an important statement of the agreed seniority status of employees thus temporarily removed from the payroll. There was need to mention this type of absence not because of uncertainty as to pay status but to clarify seniority rights.

I think, as did the District Court, that the contract is clear in its intendment that the absent employees are entitled to pay for the days in suit only if they allege and prove that the situation is within one of the enumerated categories—vacation, holiday, sick leave, jury duty, or negotiating time.

Only brief comment will be made on one other theory of liability urged by the union. It is said that the 1950 contract incorporated certain alleged earlier understandings concerning compensation for periods of voluntary absence. The answer is two-fold. As already shown, the formal agreement is detailed and comprehensive in its enumeration of the circumstances in which there is to be pay for voluntary absence. Moreover, it contains this provision:

> "This Agreement expresses the understanding of the parties in respect to matters deemed by them to be Company-wide and * * * it will not be changed, modified or varied except by a written instrument signed by duly authorized agents of the parties hereto, * * "

This suit attempts to "change, modify or vary" the terms of the formal agreement. And the only provision of the contract

**634**

which defendant points out as containing any possible sanction for the modifying incorporation of any past understanding in the 1950 agreement is in fact, as the District Court pointed out, a prospective reference in subsection H of section VI to interpretations which may be agreed upon in the future. There is nothing in the 1950 contract which makes it either necessary or appropriate to read into it any alleged prior understanding about paying for periods of voluntary absence.

It is my view that the judgment should be affirmed.

I am authorized to state that BIGGS, Chief Judge, and KALODNER, Circuit Judge, join in this dissent.