**TEXTILE WORKERS UNION OF AMERICA, Appellant,**

v.

**CONE MILLS CORPORATION, Appellee.**

No. 7840.

United States Court of Appeals Fourth Circuit.

Argued April 16, 1959.

Decided June 16, 1959.

David E. Feller, Washington, D. C.
(Robert S. Cahoon, Greensboro, N. C.,

Arthur J. Goldberg and Jerry D. Anker, Washington, D. C., on brief), for appellant.

Thornton H. Brooks, Greensboro, N. C. (C. T. Leonard, Jr., and McLendon, Brim, Holderness & Brooks, Greensboro, N. C., on brief), for appellee.

Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

SOPER, Circuit Judge.

This case involves the power of the District Court to entertain a suit to enforce an arbitration award which was made under a collective bargaining agreement between the Cone Mills Corporation of North Carolina and the Textile Workers Union of America, an incorporated labor organization which represented the Company's employees. A dispute by the parties to the agreement as to the compensation due the employees during a vacation or layoff period was referred to arbitration and decided against the Company; but it refused to comply with the award. The present suit was then brought under § 301(c) of the Labor Management Relations Act, 29 U.S.C.A. § 185, and the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, to secure a declaratory judgment determining the rights of the parties and to enforce the award, but the court was of the opinion that it had no jurisdiction to grant the relief and dismissed the complaint.

In December 1956, the Company declared a Christmas-New Year's vacation period from December 21, 1956 to January 1, 1957, and closed its plants. The employees received no payment during this period, since the paid vacations for the employees prescribed in the agreement had already taken place, and they were refused compensation by the State Employment Security Commission under § 96–13 of the North Carolina Employment Security Act, which provides that no person shall be considered available for work for any week, not to exceed two weeks, in any calendar year in which the

Commission finds that his unemployment is due to a vacation.

In this situation the Union claimed that the enforced vacation was really a layoff but had been designated a vacation by the Company in order to avoid payment of increased amounts under the compensation act and that by this action the Company violated the collective bargaining agreement. Accordingly, the Union filed grievances under the provisions of the collective bargaining agreement with regard to the settlement of disputes. The agreement provided that in case these procedures failed to produce a settlement, either party could submit the dispute to a Board of Arbitration, consisting of a representative chosen by each party and one impartial member chosen jointly, and that in the absence of unanimity the decision of the impartial member should be final and binding on the parties and all employees. In the present case the impartial arbitrator ruled that the declaration of the vacation without pay violated the bargaining agreement. He pointed out that the usual award in cases of layoffs in violation of bargaining agreements is the full amount of pay lost as a result of the layoff; but, since the injury caused was the employees' loss of unemployment benefits, he held in his award that the employer should make the employees whole for the loss of this compensation. Subsequently the Supreme Court of North Carolina affirmed the denial of unemployment benefits, but the Company failed to comply with the award and the present suit was brought.

Jurisdiction is based on § 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185, which provides:

"(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

"(b) Any labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets."

Although the suit was brought by the Union against the employer and the complainant seeks relief for the violation of a contract between them, the District Judge reached the conclusion that the action was in effect a suit to recover from the employer sums of money due the employees for wages as compensation and was therefore, in effect, a suit for breach of contract between the employer and employees which might be brought in the state courts but was not cognizable in the federal court under the decision in Ass'n of Westinghouse Salaried Employees v. Westinghouse Elec. Corp., 348 U.S. 437, 75 S.Ct. 488, 99 L.Ed. 510. In that case a labor union representing 4000 employees brought suit against their employer under § 301 of the Labor Act and the Federal Declaratory Judgment Act to enforce a bargaining agreement between the parties and specifically to obtain a judgment against the employer in favor of individual employees for unpaid wages alleged to be due them. The collective bargaining agreement did not require arbitration of industrial disputes, so that in case of an unresolved dispute as to the application of the agreement the only remedy of the employees was to engage in a strike or to seek relief by suit in an appropriate court. The Supreme Court held that the case should be dis-

missed for lack of jurisdiction. Three members of the Court were of the opinion that § 301 did not imply the existence or the establishment of a body of general federal substantive law for application in suits under it, and since a serious constitutional question would arise if the statute were construed to authorize a suit in a federal court it should not be so interpreted. The opinion stressed the improbability that Congress, at a time when the congestion of litigation in the federal courts in certain areas was particularly heavy, intended to open the federal courts to a flood of grievances based on industrial disputes.

Two justices concurred in the result on the ground that the statute was not sufficiently explicit to indicate that Congress intended to authorize a union to enforce in a federal court the uniquely personal rights of employees to recover compensation for services rendered; and a sixth justice concurred in the result on the ground that, although Congress had constitutional power to give the federal courts jurisdiction over a cause of action for breach of contract between a union and an employer, the question before the Court involved a claim for wages under separate hiring contracts between the employer and each employee and did not involve a violation of a contract between the union and the employer.

These divergent views naturally gave rise to doubts as to the proper interpretation of the statute and the decision became authority only for the conclusion that the federal courts were not open to suits by a union on behalf of individual employees for back wages even if they were covered by contract between the union and the employer. However, it was not long before the Court, in Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 923, 1 L.Ed. 2d 972, cast a clearer light on this field of litigation. That suit was brought by a union against an employer for violation of a collective bargaining agreement by refusing to submit to arbitration a dispute between the parties as to work loads and work assignments of the employees that had been processed in accordance with the procedures laid down in the agreement and had failed of settlement. The contract provided that in such event the controversy should be submitted to arbitration upon the request of either party; and the union made such a request, which the employer refused. Thereupon the union brought suit in the federal court for specific performance of the arbitration provision and the suit was determined in its favor when it was reviewed on certiorari by the Supreme Court of the United States.

The Court held that § 301(b) was enacted to enable a labor organization representing employees in an industry affecting commerce to sue and to be sued as an entity, whether incorporated or not, and thus provided a remedy lacking at common law; and that § 301(a) giving jurisdiction to the district court over suits for violation of labor contracts between an employer and a labor organization was more than jurisdictional. It was demonstrated from the legislative history that Congress was interested not only in according a right of action in the federal courts to the party aggrieved by the violation of a labor contract, but also in promoting collective bargaining that results in an agreement on the part of the union not to strike and the correlative agreement on the part of the employer to arbitrate grievance disputes. The Court said (353 U.S. at pages 455–456, 77 S.Ct. at page 917):

"Plainly the agreement to arbitrate grievance disputes is the *quid pro quo* for an agreement not to strike. Viewed in this light, the legislation does more than confer jurisdiction in the federal courts over labor organizations. It expresses a federal policy that federal courts should enforce these agreements on behalf of or against labor organizations and that industrial peace can be best obtained only in that way.

\* \* \* \* \* \*

"It seems, therefore, clear to us that Congress adopted a policy which

placed sanctions behind agreements to arbitrate grievance disputes, by implication rejecting the common-law rule, discussed in Red Cross Line v. Atlantic Fruit Co., 264 U.S. 109, 44 S.Ct. 274, 68 L.Ed. 582, against enforcement of executory agreements to arbitrate. We would undercut the Act and defeat its policy if we read § 301 narrowly as only conferring jurisdiction over labor organizations."

■ In fine, the Court concluded that § 301(a), in addition to conferring jurisdiction upon the courts in such matters, directed the courts to apply in the solution of labor disputes a federal substantive law "which the courts must fashion from the policy of our national labor law." Some of this substantive law, it was said, is found in the Labor Management Relations Act and more will be fashioned in deciding litigated cases in harmony with the policy of the statute as specific problems arise. No substantial constitutional difficulty was found in this course since Congress has power to regulate labor-management relations under the commerce clause of the Constitution, art. 1, § 8, cl. 3, and Article III, Section 2 of the Constitution extends the judicial power to cases arising under the laws of the United States.

The Court pointed out in a footnote (353 U.S. at page 456, 77 S.Ct. at page 917) that Westinghouse, supra, was a very different case since it was a suit by the union to recover unpaid wages on behalf of the employees and the basic question was whether the union could sue and recover on individual employment contracts, while the question in the Lincoln case related to the right of the union to enforce an agreement to arbitrate set forth in its own contract with the employer.

Confronted by these two important decisions the District Judge was called on to decide which controlled the pending case, and he reached the conclusion that Westinghouse was the more apposite since in the pending case, as in Westinghouse, the ultimate goal of the union was to recover for its constituents money due them for past services. This analogy, it must be conceded, is not without persuasive force, but we think that it is not controlling in view of the conclusion in the later decision that Congress intended to place the enforcement of the arbitration clauses of labor contracts in the hands of the federal courts even if the employees are the ultimate beneficiaries. Such was the situation in the Lincoln case, where the union sought to obtain relief for the employees from work loads and work assignments, which can hardly be distinguished in principle from the recovery of wages that are overdue. Moreover, the Lincoln case itself was confined, in its final posture, to the issue of a monetary award, for by the time the case reached the Supreme Court the employer had gone out of business and the case had become moot except for a disputed claim for back pay for increased work loads.[1] Actually the only dissimilarity between the facts in the Lincoln case and those in the case at bar is that in the former the employer refused to enter an arbitration, while in the latter the employer refused to abide by an award after the arbitration had been concluded. If there is jurisdiction in one case it would seem there should be jurisdiction in the other.

We recognize the factual distinction upon which the employer relies in this

1. On the same day that the Lincoln case was decided the Court handed down opinions in two companion cases which also involved grievances of individual employees. General Electric Co. v. Local 205 United Electrical Workers, 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028, involved the question of the validity of the discharge of one employee and the rate of pay due another. In Goodall-Sanford v. United Textile Workers, 353 U.S. 550, 77 Ct. 920, 1 L.Ed.2d 1031, the Court held that the District Court had jurisdiction to entertain a suit to compel arbitration where the issue was whether the employer was justified in terminating the employment of certain employees instead of laying them off and preserving their seniority and other rights.

case, between a refusal to perform an agreement to arbitrate, as in the Lincoln case, and a refusal of the losing party in an arbitration proceeding to accept and comply with the award of the arbitrator as in the case at bar. But we think that in order to carry out the teaching of the Lincoln case the distinction must be disregarded. The purpose of Congress to give effect to employer-union contracts and to afford full relief for breaches of those contracts would be frustrated if the courts should decree specific performance to agreements to arbitrate but deny enforcement to arbitration awards which the parties have agreed in advance to accept. In both cases the right of action is based in the last resort on breach of contract between the parties (Williston on Contracts, Vol. 6, Sec. 1927) so that jurisdiction comes within the literal terms of the statute; and relief in the form of specific performance is as appropriate and as necessary in one case as the other to effectuate the Congressional will. Under the Lincoln decision we are no longer inhibited by the old rule that the courts will not give specific performance to agreements to arbitrate. By parity of reasoning the court should enforce arbitration awards, for this is but a short step in the development of a substantive federal law to meet the problems as they arise in this area. If arbitration can be specifically enforced, the court should have power to afford complete relief by enforcing the award. As Mr. Justice Burton concurring in the Lincoln case said, 353 U.S. 460, 77 S.Ct. 919, "having jurisdiction over the suit, the court was not powerless to fashion an appropriate federal remedy." [2]

In accord is the decision in A. L. Kornman Co. v. Amalgamated Clothing Workers, 6 Cir., 264 F.2d 733.

In its brief in the pending case the Union discusses not only the question of the jurisdiction of the court to enforce the arbitration agreement, but also other questions relating to the validity of the award, including the scope of the grievances submitted to arbitration, the finality of the decision and the bias and partiality of the arbitrator. The District Judge did not reach these questions since he came to the conclusion that the court lacked jurisdiction to entertain the case. We do not consider them in this opinion; but they should be considered by the District Court upon the remand.

The judgment of the District Court is therefore reversed and the case remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

---

**2.** See also Terrell v. Allison, 21 Wall. 289, 88 U.S. 289, 22 L.Ed. 634; Ober v. Gallagher, 93 U.S. 199, 206, 23 L.Ed. 829; Ward v. Todd, 103 U.S. 327, 329, 26 L. Ed. 339; Hartford Accident & Indemnity Co. of Hartford v. Southern Pacific Co., 273 U.S. 207, 217–218, 47 S.Ct. 357, 71 L.Ed. 612; Alexander v. Hillman, 296 U. S. 222, 242, 56 S.Ct. 204, 80 L.Ed. 192; 19 Am.Jur., Equity, Sec. 127.