**LOCAL 130 OF THE INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, Plaintiff,**

v.

**MISSISSIPPI VALLEY ELECTRIC COMPANY, a Partnership, et al., Defendants.**

No. 8964.

United States District Court
E. D. Louisiana,
New Orleans Division.

Aug. 5, 1959.

Cassibry, Jackson & Hess, Fred J. Cassibry, New Orleans, La., for plaintiff.

Baldwin, Haspel, Molony, Rainold & Meyer, L. J. Molony, New Orleans, La., for defendants.

J. SKELLY WRIGHT, District Judge.

The Union seeks enforcement of an arbitration award covering unpaid wages payable to certain of defendants' employees. The defendant employer has moved to dismiss on the ground that the Union cannot sue to recover unpaid wages allegedly due employees under the collective bargaining agreement, that the grievance procedure outlined in that agreement does not amount to arbitration, and that, in any event, there is no authority in the agreement for a money award. The plaintiff has moved for summary judgment on the ground that since there is no controverted issue of fact, it is entitled to judgment as a matter of law.

Mississippi Valley Electric Company is a member of the South Louisiana Chapter of the National Electrical Contractors Association. This association, as a representative of Mississippi Valley and other independent electrical contractors, entered into a collective bargaining agreement with Local 130 on July 1, 1957. This contract lists certain job classifications and sets minimum wage rates for those jobs. It also contains a no strike clause [1] as well as a provision for the adjustment of disputes through arbitration machinery set up therein.[2]

1. Article I, Section 4 of the collective bargaining agreement reads:

"Section 4. There shall be no stoppage of work either by strike or lockout because of any proposed changes in this agreement or disputes over matters relating to this agreement. All such matters must be handled as stated herein."

2. The relevant provisions of the agreement read:

"Section 5. There shall be a Joint.

The arbitration machinery operates in three stages, in any of which a dispute may be settled. The first stage consists of a meeting of the disputants' representatives, the local union's business manager and the association's chapter manager, with the contractor himself sitting in on the discussions if he wishes. If no resolution of the conflict is found in the first stage, the dispute is referred to a Joint Labor Management Committee of ten members, five representing the employer and five the union. Should this committee fail to agree or to adjust the dispute, the matter is then referred to the Council on Industrial Relations for the Electrical Industry for the United States and Canada, the decision of the Council being "binding and final on both parties."

On June 24, 1958, the Union filed with the Association a formal protest against the work practices of the defendant, Mississippi Valley, and asked for a meeting between union and chapter representatives so that the dispute could be adjusted. The Union charged that while performing a contract for the Dock Board of New Orleans, Mississippi Valley assigned certain work to be done in the shop at the local shop pay rate when such work should have been performed on the job site at the higher line journeyman's wage rate. The Union also charged that on the same job Mississippi Valley sublet part of its contractual obligation to contractors who were not bound by union wage rates.

When the first stage of arbitration procedure failed to resolve the differences between the parties, the matter was referred to the Joint Committee. On January 21, 1959, the Committee found Mississippi Valley "guilty on all charges" and announced the following award: "The penalty shall be that Mississippi Valley Electric shall pay the men who performed work in the shop at shop rate of pay on the Line job in question, $353.-00 prorated among the men who performed said work, in the shop. This is the Committee's estimate of difference of wages due the men." The Union has brought this action in this Court to enforce this award, and the threshold consideration is whether this Court has jurisdiction so to do under § 301 of the Taft Hartley Act. 29 U.S.C.A. § 185.

In Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510, the Supreme Court held that § 301 does not authorize a suit by a union seeking a judgment for unpaid wages owed individual employees under the collective bargaining agreement. It is this case, of course, on which the defendant employer relies. Two years after this

Labor Management Committee of five (5) representing the Employer and five (5) representing the Union. It shall meet regularly at such stated times as it may decide. However, it shall also meet within 48 hours when notice is given by either party. It shall select its own Chairman and Secretary.

"Section 6. All grievances or questions in dispute shall be adjusted by the duly selected representatives of both parties to this agreement. In the event that these two are unable to adjust any matter within 48 hours, they shall refer same to the Joint Labor Management Committee.

"Section 7. All matters coming before the Committee shall be decided by a majority vote. Six (6) members of the committee, three (3) from each of the parties hereto, shall be a quorum for the transaction of business, but each party shall have the right to cast the full vote of its membership and it shall be counted as though all were present and voting.

"Section 8. Should this Committee fail to agree or to adjust any matter, such shall then be referred to the Council on Industrial Relations for the Electrical Industry for the United States and Canada. The decision of the Council shall be binding and final on both parties hereto.

"Section 9. When any matter in dispute has been referred to the Joint Labor Management Committee or the Council on Industrial Relations for the Electrical Industry for the United States and Canada, for adjustment, the provisions and conditions prevailing prior to the time such matter arose shall not be changed or abrograted, pending a decision in such conciliation or arbitration."

decision was rendered, however, the Supreme Court, in deciding Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 923, 1 L.Ed.2d 972, and two companion cases,[3] beat a retreat from Westinghouse. In Lincoln Mills the Court required the employer to submit to arbitration, as provided in the collective bargaining agreement, in a dispute between the parties as to work loads and work assignments of the employees. The Court in Lincoln Mills said that the federal court must fashion its own body of law in interpreting § 301 with respect to the responsibilities of the parties to a collective bargaining agreement.

Left unanswered in Lincoln Mills was whether specific performance of an award made by an arbitration group, formed pursuant to a collective bargaining agreement, can be enforced by a federal court under § 301. This question has been answered in the affirmative by the Sixth Circuit in A. L. Kornman Co. v. Amalgamated Clothing Workers, 264 F. 2d 733, and by the Fourth Circuit in Textile Workers Union of America v. Cone Mills Corporation, 268 F.2d 920, and Enterprise Wheel & Car Corporation v. United Steelworkers of America, 269 F.2d 327. These cases also answered the further question as to whether the district courts had jurisdiction to enforce the arbitration clause of a labor contract if the employees themselves may be the ultimate beneficiaries of the award. Again the answer was in the affirmative. In Kornman, supra, the Court enforced an arbitration award of vacation pay to employees. In Cone, supra, the Court enforced an arbitration award involving unemployment benefits to employees. And in Enterprise Wheel & Car Corporation v. United Steelworkers of America, supra, the Court enforced an award covering reinstatement of employees with payment of back wages.

The defendant employer cites Refinery Employees Union of the Lake Charles Area v. Continental Oil Company,[4] 5 Cir., 268 F.2d 447, as the one case which has resisted the retreat from Westinghouse. The dispute there related to the right of certain employees to make overtime pay. The arbitrators decided that the employer had breached the bargaining agreement by favoring certain employees with overtime work, thus denying the overtime to employees entitled thereto under the contract. The award provided that the employer must pay the overtime as damages even though the work had actually been performed by other employees who were paid therefor.

The Fifth Circuit read the arbitration provisions of the bargaining agreement narrowly. It held that while the parties could be required to arbitrate, no money award could be made since there was no specific provision therefor in the bargaining agreement. It pointed out that the arbitration clause in the bargaining agreement was severely limited as to the subject matter for arbitration. It also held that, since under the bargaining agreement the Union retained the right to strike, there was no quid pro quo for a broad grant of authority to arbitrate disputes.

The bargaining agreement of the parties here contains a no strike clause. Moreover, its arbitration provision covers "all grievances or questions in dispute." These provisions in the bargaining agreement distinguish this case from Refinery Employees Union of the Lake Charles Area v. Continental Oil Company, supra, decided by the Fifth Circuit, and bring it within the ambit of the Kornman case from the Sixth Circuit and the Cone Mills Corporation and Enterprise Wheel & Car Corporation cases from the Fourth Circuit.

3. General Electric Co. v. Local 205, etc., 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028; Goodall-Sanford, Inc. v. United Textile Workers of America, 353 U.S. 550, 77 S.Ct. 920, 1 L.Ed.2d 1031.

4. Compare United Steelworkers of America, A.F.L.–C.I.O. v. Warrior & Gulf Navigation Company, 5 Cir., 269 F.2d 633.

The defendant also argues that no genuine arbitration machinery is set up in the bargaining agreement and thus Lincoln Mills and its progeny are irrelevant. It is true that the arbitration provisions do not follow the classic formulation of the United States Arbitration Act.[5] But the United States Arbitration Act specifically does not apply to labor disputes. 9 U.S.C. § 1. The arbitration machinery set up in the contract is what the parties agreed to, presumably because it was best suited for the purpose intended. It is a comprehensive, fair, and final method for settlement of disputes, binding on both parties.

Motion of defendant to dismiss denied. Motion of plaintiff for summary judgment granted.