278 F.2d 764
 MISSISSIPPI VALLEY ELECTRIC COMPANY, a Partnership, and
Frank L. Pendergrass; James L. Pendergrass and
Katie T. Pendergrass, Individually, Appellants,
v.
LOCAL 130 of the INTERNATIONAL BROTHERHOOD OF ELECTRICAL
WORKERS, AFL-CIO, Appellee.
 No. 18010.
 United States Court of Appeals Fifth Circuit.
 May 10, 1960.
 
 Lawrence J. Molony, Baldwin, Haspel, Molony, Rainold & Meyer, New Orleans, La., for appellants.
 Fred J. Cassibry, Victor Hess, Jr., Cassibry, Jackson & Hess, New Orleans, La., for appellee.
 Before CAMERON, JONES and BROWN, Circuit Judges.
 CAMERON, Circuit Judge.
 
 
 1
 The narrow question upon which this appeal will be decided is whether under 301 of the Taft-Hartley Act, 29 U.S.C.A. 185, the court below had jurisdiction of an action brought by the union to recover wages allegedly due individual employees, figured at the rates and under the terms of the Collective Bargaining Agreement between the union and the employer. The union, appellee, sued the Electric Company, appellant, to collect wages in the sum of $353.00 found by the Joint Labor Management Committee to be due to certain of appellant's employees. Appellant moved to dismiss upon the ground, among others, that the court below did not have jurisdiction of such a suit by the union. Said court denied this motion and granted summary judgment in favor of the appellee union for the amount shown by the affidavits to be due under the award to individual employees, said judgment ordering that the appellant pay to the union the sum awarded 'so that said award may be implemented by the plaintiff (union).'
 
 
 2
 The facts are more fully set forth in the written opinion of the court below.[1] Its reasoning is epitomized in this language: 'In Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510, the Supreme Court held that 301 does not authorize a suit by a union seeking a judgment for unpaid wages owed individual employees under the collective bargaining agreement. * * * Two years after this decision was rendered, however, the Supreme Court, in deciding Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 923, 1 L.Ed.2d 972, and two companion cases, beat a retreat from Westinghouse. * * *'
 
 
 3
 'Left unanswered in Lincoln Mills was whether specific performance of an award made by an arbitration group, formed pursuant to a collective bargaining agreement, can be enforced by a federal court under 301. * * *'
 
 
 4
 We are unable to agree that, as applied to the facts before us, the Supreme Court has 'beat a retreat from Westinghouse;' and are of the opinion that the Westinghouse decision is controlling on us in the decision of this case. Westinghouse involved a civil action brought by the union against the Westinghouse Corporation to recover upwards of $45,000.00 alleged to be due four thousand employees represented by plaintiff, as wages for April 3, 1951, under the allegation that the wages were due by reason of the collective bargaining contract between the union and Westinghouse.[2]
 
 
 5
 The Westinghouse Corporation defended on the contention 'that the court does not have jurisdiction because these claims arise from 'the individual employment contract rather than from the Collective Bargaining Contract,' and that Section 301(a) of the Taft-Hartley Law gives jurisdiction to a federal court only in the event that the contract in suit was entered into between the employer and the labor organization as distinguished from an individual contract of hiring entered into between the employer and the individual employee.'[3] The district court rejected that contention:
 
 
 6
 'In the opinion of the court, this contention fails because the complaint under consideration is based exclusively upon the Collective Bargaining Contract between the association and the corporation and not upon the contracts of hiring between the corporation and the individual employees.'
 
 
 7
 Based upon its conclusion that the complaints did not show affirmatively the specific causes of the absences of the employees on April 3rd, the district court dismissed the complaint. The union appealed to the Court of Appeals for the Third Circuit, which gave detailed consideration to the question now before us and vacated the district court's order and dismissed the complaint for lack of jurisdiction.[4]
 
 
 8
 The Supreme Court affirmed the action of the Court of Appeals in an exhaustive opinion[5] which, with the dissents, covers thirty pages of the official reports. The opinion of the court (concurred in by three Justices) includes a historical study of labor legislation and an analysis of the language of the statute supplemented by the congressional history and announces this conclusion:
 
 
 9
 'Considering the nature of a collective bargaining contract, which involves the correlative rights of employer, employee and union, we might be disposed to read 301 as allowing the union to sue in this case. With due regard to the constitutional With due regard to the constitutional be raised, and in view of the fact that such an interpretation would bring to the federal courts an extensive range of litigation heretofore entertained by the States, we conclude that Congress did not will this result. There was no suggestion that Congress, at a time when its attention was directed to congestion in the federal courts, particularly in the heavy industrial areas, intended to open the doors of the federal courts to a potential flood of grievances based upon an employer's failure to comply with terms of a collective agreement relating to compensation, terms peculiar in the individual benefit which is their subject matter and which, when violated, give a cause of action to the individual employee. The employees have always been able to enforce their individual rights in the state courts. * * *
 
 
 10
 'Nowhere in the legislative history did Congress discuss or show any recognition of the type of suit involved here, in which the union is suing on behalf of employees for accrued wages. Therefore, we conclude that Congress did not confer on the federal courts jurisdiction over a suit such as this one.' 348 U.S. 459-460, 75 S.Ct. 500-501.
 
 
 11
 Two additional Justices, concurring in the result, stated: 'For us the language of 301 is not sufficiently explicit nor its legislative history sufficiently clear to indicate that Congress intended to authorize a union to enforce in a federal court the uniquely personal right of an employee for whom it had bargained to receive compensation for services rendered his employer. * * *'
 
 
 12
 One other Justice, specifically concurring, stated his reasons thus: 'The reason, I think, that this union cannot recover from the employer in this suit under 301 is that the claim for wages for the employees arises from separate hiring contracts between the employer and each employee. The union does not undertake to do work for the employer or even to furnish workers. The duty, if any there be, to pay wages to an employee arises from the individual contract between the employer and employee, not from the collective bargaining agreement. Therefore there is set out no violation of a contract between an employer and a labor organization as is required to confer jurisdiction under 301. The facts show an alleged violation of a contract between an employer and an employee-- a situation that is not covered by the statute.'
 
 
 13
 All of the contentions here made,[6] therefore, were given full consideration by the Court of Appeals and by the Supreme Court in Westinghouse and the conclusion reached by both was that a suit by the union to collect wages claimed to be due employees was not maintainable under the Taft-Hartley Act. The facts of this case bring it squarely under Westinghouse not within the ambit of Lincoln Mills and, as applied to the case before us, we cannot agree with the conclusion of the court below that the Supreme Court 'beat a retreat from Westinghouse' in the Lincoln Mills case.[7] As far as their holdings relate to the facts of our own case, at least, we find no conflict between Westinghouse and Lincoln Mills.
 
 
 14
 The language of footnote 6 of the Lincoln Mills decision, 353 U.S. at page 456, 77 S.Ct. at page 917, 1 L.Ed.2d 972, indicates clearly that it was the Court's intention to adhere to its decision in Westinghouse in suits involving only recovery of wages claimed to be due individual employees:
 
 
 15
 'Association of Westinghouse Salaried Employees v. Westinghouse Corp., 348 U.S. 437 (75 S.Ct. 489, 99 L.Ed. 510), is quite a different case. There the union sued to recover unpaid wages on behalf of some 4,000 employees. The basic question concerned the standing of the union to sue and recover on those individual employment contracts. The question here concerns the right of the union to enforce the agreement to arbitrate which it has made with the employer.'
 
 
 16
 The opinion of two of the Justices concurring in the result reached in the Lincoln Mills decision supports the same thesis.[8] Examination of the Lincoln Mills case as it was dealt with by the Court of Appeals shows that both the majority[9] and dissenting opinions considered the problem before the court to be a 'genuine union controversy.' And the essential thrust of the opinion of the Supreme Court together with the concurrence and the dissent show the same thing.[10]
 
 
 17
 The court below conceded that Lincoln Mills did not decide the question before it, but felt that the question had been answered by three Circuit Court cases.[11] While these cases have a tendency, upon superficial examination, to support the action of the court below, each of them had its genesis in the effort to enforce a right claimed by the union itself as against the employer.
 
 
 18
 The case before us presents no such complications. Here, the union sues to recover a specific amount claimed to be due individual employees. The action seeks nothing but a money judgment. Nothing in the record tends to show that the union had been commissioned by the unnamed individual employees to prosecute the action as their representative. Nothing in the law or the rules of procedure vests the union with any such authority. The obligation sought to be enforced here would come into being only if the employees performed specified duties. The rate of pay was fixed by the union contract, but the obligation to pay grew solely out of individual contracts with individual employees. If the union should be held to have the right to maintain this action, each employee it purported to represent would be bound by the results it obtained. There is nothing in the record to indicate that the employees had constituted the union their agent to file such an action.
 
 
 19
 Both the language of 301 and the holding of Westinghouse categorically reject the right of the union to do what it seeks to do here.[12] We hold that the court below erroneously awarded summary judgment in favor of the appellee. Instead, it ought, in our opinion, to have granted appellant's motion to dismiss. For the entry of such an order the judgment of the court below is reversed and the case is remanded.
 
 
 20
 Reversed and remanded.
 
 
 21
 JONES, Circuit Judge (concurring specially).
 
 
 22
 With the conclusion stated in the opinion written for the Court I am in agreement. I think the three cases cited in footnote 11 of that opinion are contrary to the conclusion there expressed and are in accord with the views of the district court in this case. I think the Westinghouse rule requires a reversal of the decision before us for review. I share the view that Lincoln Mills does not govern this case, but that we are bound by Westinghouse. Therefore I would depart from the doctrines of the Fourth and Sixth Circuits and join in the reversal of the judgment of the district court.
 
 
 23
 JOHN R. BROWN, Circuit Judge (dissenting).
 
 
 24
 I respectfully dissent.
 
 
 25
 Despite its initial appearance and this Court's treatment, with which I cannot agree, this is not a suit by the Union to recover a debt owed to individual employees. Rather-- viewed as it must be from the scope of a complaint under F.R.Civ.P. 8(a), 12(b)(6), 54(c), 28 U.S.C.A. and Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80-- it is an action for specific performance of a unanimous arbitration award determined pursuant to the provisions of the collective bargaining agreement between the Union and Employer.
 
 
 26
 The collective bargaining agreement set up the arbitration scheme. In exchange for a no-strike (and no-lockout) clause, all disputes over matters relating to the collective agreement were to be adjusted through the arbitration process provided for in the contract. Initially, any dispute is to be handled by two designated representatives of the parties. If they fail to resolve the controversy, the matter is referred to a joint Labor Management Committee consisting of five union and five employer representatives. Should this Committee fail to agree or to adjust any matter, the dispute is then referred to the Council on Industrial Relations for the Electrical Industry for the United States and Canada, whose decision is 'binding and final on both parties.'[1] Here the Joint Labor Management Committee undertook to decide and did decide the controversy. The only difficulty as far as the Employer is concerned is that the Committee decided against it. Thus here what superficially appears as merely an assertion by the Union for direct relief, i.e., back wages, for individual employees in fact is an effort to require the Employer to abide by the arbitrator's award pursuant to an agreement to arbitrate which the District Court would have been empowered specifically to enforce had the Employer declined to allow consideration of the dispute by the Joint Labor Management Committee. Textile Workers Union of America v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 912, 923, 1 L.Ed.2d 972.
 
 
 27
 This is, on all tests, a union controversy in which the Union is asserting in its collective capacity a demand that the Employer abide by its contractual obligation to comply with resulting decisions or awards of the arbitration process. It is not an effort by the Union to enforce 'uniquely personal rights' of individual employees. The only novel or surprising thing is that, at this late date, there should be any doubt that the District Court has jurisdiction under 301 of the Taft-Hartley Act, 29 U.S.C.A. 185, to enforce an arbitration award resulting from an agreement to arbitrate which the District Court would have been empowered specifically to have enforced. Textile Workers Union of America v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 912, 923, 1 L.Ed.2d 972.
 
 
 28
 Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 1955, 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510, is no obstacle. There the Supreme Court in a 3-2-1-2 split held that 301 does not of itself authorize a union to bring a direct action (apart from any arbitration machinery) to recover back wages for individual employees. As Chief Justice Warren (with Justice Clark concurring) stated the holding,[2] '* * * 301 is not sufficiently * * * clear to indicate that Congress intended to authorize a union to enforce in a federal court the uniquely personal right of an employee for whom it had bargained to receive compensation for services rendered his employer.' 348 U.S. 437, at page 461, 75 S.Ct. 489, at page 501, 99 L.Ed. 510, at page 525. But the rationale of Mr. Justice Frankfurter-- rigorously confining 301 to a procedural[3] concept to avoid 'serious constitutional problems'[4] -- in reaching the generally agreed upon result, was clearly rejected in Lincoln Mills as his lone dissent indicates. The Supreme Court[5] in Lincoln Mills held that 301 '* * * does more than confer jurisdiction in the federal courts over labor organizations. It expresses a federal policy that federal courts should enforce these agreements (to arbitrate grievance disputes) on behalf of or against labor organizations * * * The question then is, what is the substantive law to be applied in suits under 301(a)? We conclude that the substantive law to apply * * * under 301(a) is federal law, which the courts must fashion from the policy of our national labor laws.' 353 U.S. 448, 455-456, 77 S.Ct. 912, 917, 1 L.Ed.2d 972, 979-980. Yet it is this apprehension of constitutional and court administrative problems which occupies the principal attention of Judge Cameron's opinion.[6] We need not determine whether the result merits the language characteristic of the colorful opinions of Judge Wright-- that the Court 'beat a retreat from Westinghouse.'[7] In a figure indigenous to warfare-- military or industrial-- if the Court did not beat a retreat, at least the army changed. He who was its spokesman with a small band of two others, finds himself now all alone. Moreso, the cause he so earnestly championed-- constitutional and administrative limitations-- was abandoned by former allies. And where once stood forces divided by 3-2-1-2 all but one were now united that it was a matter within the constitutional power of the federal government and that it posed no administrative problems insuperable to the judicial machinery. And this, though at the bottom of the case was merely an aggregation of grievances personal to specific workers concerning 'work loads and work assignments.' 353 U.S. 448, 449, 77 S.Ct. 912, 914, 1 L.Ed.2d 972, 976.[8]
 
 
 29
 Since the District Court has jurisdiction under 301 to enforce an agreement to arbitrate-- an obligation running to a union and not a uniquely personal right of the employee-- it must necessarily have jurisdiction to enforce the resulting award. To hold otherwise would reduce arbitration to an empty shell in which the agreement to arbitrate, which could be specifically enforced under 301, is merely a futile and timeconsuming prelude to a meaningful determination which must now come through other means. The tenor-- if not command-- of Lincoln Mills is to the contrary. As the agreement to arbitrate grievance disputes is the quid pro quo for an agreement not to strike, 301 '* * * expresses a federal policy that federal courts should enforce these agreements on behalf of or against labor organizations and that industrial peace can be best obtained only in that way.' Lincoln Mills, supra, 353 U.S. 448, 455, 77 S.Ct. 912, 917, 1 L.Ed.2d 972, 979. The obligation to comply with the award runs to the union-- and is therefore a union controversy-- though the subject matter in dispute may or may not be primarily personal to employees, see note h, supra.
 
 
 30
 We stand in conflict with both the Fourth and the Sixth Circuits. For me, I cannot brush them off so lightly as does the majority (see note 11 and appended text). In cases in which the issue has been directly posed both have held that 301 authorized a federal court to enforce an award arrived at through the arbitration process. In A. L. Kornman Co. v. Amalgamated Clothing Workers, 6 Cir., 1959, 264 F.2d 733, the Court enforced an arbitration award of vacation pay to the employees. To the same effect are the two cases from the Fourth Circuit, Textile Workers Union of America v. Cone Mills Corp., 4 Cir., 1959, 268 F.2d 920, involved a suit by the union for specific performance of an arbitration award of unemployment benefits of employees. In Enterprise Wheel & Car Corp. v. United Steel Workers, 4 Cir., 1959, 269 F.2d 327, the Court decreed specific performance of an award to the union for lost wages of discharged employees.
 
 
 31
 Employer and Union agreed in their wisdom to forego work stoppages-- whether by strike or lockout-- and submit disputes to the arbitration machinery which they set up. A dispute has been submitted and resolved in the form of an award to the Union.
 
 
 32
 The Union agreed to arbitrate. The Employer agreed to arbitrate. Congress, by 301, sought to create effective sanctions to compel parties to industrial disputes to live up to their contracts. The contract with the Union was that the Employer would arbitrate and the arbitration awards would be complied with. It is that agreement which the Employer has breached.
 
 
 33
 The Employer's breach presented a union suit and the District Court properly enforced the award. 175 F.Supp. 315.
 
 
 34
 I therefore dissent.
 
 
 
 [1]
 1959, 175 F.Supp. 312, 313
 
 
 [2]
 The amended complaint prayed in behalf of the union and 'the individuals in interest whom it represents' a declaratory judgment as to the meaning of the provisions of the contract under which the action was brought and repeated the demand for the money judgment
 
 
 [3]
 D.C.1952, 107 F.Supp. 692, 694
 
 
 [4]
 1953, 210 F.2d 623
 
 
 [5]
 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510
 
 
 [6]
 The complaint upon which the court below entered the judgment before us sets forth certain terms of a collective bargaining agreement entered into between the appellee union and the chapter of the National Electric Contractors Association which was acting for and on behalf of the appellant Mississippi Valley. The complaint further avers that the union notified the appellant by letter of certain respects in which it had violated sections of the contract, quotes the provisions of the contract governing settlement of grievances or disputes between the parties, charges that the machinery provided in the contract had resulted in an award by the Joint Labor Management Committee, which provided in part that Mississippi Valley 'should pay certain of Mississippi Valley's employees $350.00 because Mississippi Valley had failed to pay the scale of wages to those employees as provided for in the agreement,' and concludes with these averments and prayer for relief:
 '12. A part of the award of the Joint Labor Management Committee was that defendant should pay certain of defendant's employees $350.00 because defendant had failed to pay the scale of wages to those employees as provided for in the agreement.
 '13. Despite repeated demands made on the defendant by plaintiff, defendant refused and does still refuse to abide by the award of the Joint Labor Management Committee.
 'Wherefore, plaintiff demands judgment against defendant in the sum of Three Hundred Fifty ($350.00) Dollars, interest and costs.'
 
 
 [7]
 353 U.S. 448, 77 S.Ct. 912, 923, 1 L.Ed.2d 972
 
 
 [8]
 353 U.S. at page 460, 77 S.Ct. at page 919: 'The District Court had jurisdiction over the action since it involved an obligation running to a union-- a union controversy-- and not uniquely personal rights of employees sought to be enforced by a union. Cf. Association of Westinghouse Salaried Employees v. Westinghouse Elec. Corp., 348 U.S. 437 (75 S.Ct. 489, 99 L.Ed. 510). * * * The power to decree specific performance of a collectively bargained agreement to arbitrate finds its source in 301 itself, and in a Federal District Court's inherent equitable powers, nurtured by a congressional policy to encourage and enforce labor arbitration in industries affecting commerce.'
 
 
 [9]
 Lincoln Mills of Alabama v. Textile Workers Union, etc., 5 Cir., 1956, 230 F.2d 81, 95, and dissenting opinion, ibid. at pages 89, 95
 
 
 [10]
 It is clear, also, that the other two Supreme Court cases cited by the court below, General Electric Co. v. Local 205, etc., 1957, 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028, and Goodale-Sanford, Inc. v. United Textile Workers of America, 1957, 353 U.S. 550, 77 S.Ct. 920, 1 L.Ed.2d 1031, involved controversies between the union and the employer concerning peculiarly union rights in collective bargaining agreements, and did not involve a mere attempt by the union to collect wages alleged to be due to the individual employees
 
 
 [11]
 A. L. Kornman Co. v. Amalgamated Clothing Workers, etc., 6 Cir., 1959, 264 F.2d 733; Textile Workers Union of America v. Cone Mills Corporation, 4 Cir., 1959, 268 F.2d 920; and Enterprise Wheel & Car Corp. v. United Steelworkers of America, 4 Cir., 1959, 269 F.2d 327
 
 
 [12]
 And cf. Item Company v. New Orleans Newspaper Guild, 5 Cir., 1958, 256 F.2d 855, and Refinery Employees Union of Lake Charles Area v. Continental Oil Co., 5 Cir., 1959, 268 F.2d 447, certiorari denied 361 U.S. 896, 80 S.Ct. 199, 4 L.Ed.2d 152
 
 
 [1]
 The pertinent provisions of the agreement read as follows:
 'Section 4. There shall be no stoppage of work either by strike or lockout because of any * * * disputes over matters relating to this agreement. All such matters must be handled as stated herein.
 'Section 5. There shall be a Joint Labor Management Committee of five (5) representing the Employer and five (5) representing the Union. * * *
 'Section 6. All grievances or questions in dispute shall be adjusted by the duly selected representatives of both parties to this agreement. In the event that the two are unable to adjust any matter within 48 hours, they shall refer same to the Joint Labor Management Committee.
 'Section 8. Should this Committee fail to agree or to adjust any matter, such shall then be referred to the Council on Industrial Relations for the Electrical Industry for the United States and Canada. The decision of the Council shall be binding and final on both parties hereto.'
 
 
 [2]
 See the opinion of the Court by Mr. Justice Frankfurter (Justices Burton and Minton concurring) in which he stated substantially the same thing. There is no indication that Congress 'intended to open the doors of the federal courts to a potential flood of grievances based upon an employer's failure to comply with terms of the collective agreement relating to compensation, terms peculiar in the individual benefit which is their subject matter in which, when violated, give a cause of action to the individual employee.' 348 U.S. 437, 460, 75 S.Ct. 489, 501, 99 L.Ed. 510, 525
 Justice Reed agreed that it was not a proper case under 301 because it was not based upon the violation of a 'collective bargaining agreement based on the failure of either the employer or the union to carry out its undertakings with the other.' 348 U.S. 437, 462, 75 S.Ct. 489, 501, 99 L.Ed. 510, 525.
 Justices Douglas and Black dissented on the ground that this was part of the essential collective bargaining relationship and the union should have standing to sue.
 
 
 [3]
 Section 301 gives procedural directions to the federal court to overcome hampering rules governing unincorporated associations
 
 
 [4]
 Justice Frankfurter foresaw grave constitutional problems if 301 is considered as 'a grant of jurisdiction to federal courts over a contract governed entirely by state substantive law, a jurisdiction not based on diversity of citizenship yet one in which a federal court would, as in diversity cases, administer the law of the State in which it sits.'
 
 
 [5]
 The sharp divergence of views between the Court and Mr. Justice Frankfurter is illustrated by the following quotation from Justice Frankfurter's dissent in Lincoln Mills
 'The Court has avoided the difficult problems raised by 301 * * * by attributing to the section an occult content. This plainly procedural section is transmuted into a mandate to the federal courts to fashion a whole body of substantive federal law * * *. 301 cannot be so construed * * *.' 353 U.S. 448, 460-461, 77 S.Ct. 923, 1 L.Ed.2d 972, 983.
 '* * * I am impelled to the view that (301) is unconstitutional in cases such as the present ones where it provides the sole basis for exercise of jurisdiction by the federal courts.' 353 U.S. at page 484, 77 S.Ct. at pages 935-936, 1 L.Ed.2d 996.
 
 
 [6]
 See the extensive quotation from Mr. Justice Frankfurter's three justice opinion for the Court taken from 348 U.S. 459-460, 75 S.Ct. 500-501, 99 L.Ed. 510
 
 
 [7]
 175 F.Supp. 312, 314
 
 
 [8]
 See also our cases of Lodge No. 12, Dist. No. 37, International Ass'n of Machinists v. Cameron Iron Works, Inc., 5 Cir., 1958, 257 F.2d 467; Item Co. v. New Orleans Newspaper Guild, 5 Cir., 1958, 256 F.2d 855. In each we rejected the idea that since the arbitration being sought would result in decisions affecting individual workers' rights to pay, etc., it was not a 'union suit.'