**Jack ZORN et al., Plaintiffs,**

v.

**K.C. COMMUNITY CONSTRUCTION COMPANY, INC., Defendant.**

**IBEW LOCAL 124, et al., Plaintiffs,**

v.

**K.C. COMMUNITY CONSTRUCTION COMPANY, INC., Defendant.**

Nos. 92–1055–CV–W–3, 92–1105–CV–W–2.

United States District Court,
W.D. Missouri, W.D.

Dec. 29, 1992.

James G. Walsh, Jr., Janae L. Schaeffer, Jolley, Walsh & Hager, P.C., Kansas City, MO, for plaintiff Local 124 Intern. Broth. of Elec. Workers.

Anthony Joseph Romano, Matthew R. Hale, Polsinelli, White, Vardeman & Shalton, Kansas City, MO, for defendant K.C. Community Const. Co., Inc.

## ORDER GRANTING PLAINTIFFS' MOTIONS FOR A PRELIMINARY INJUNCTION

GAITAN, District Judge.

This case involves two suits brought against an electrical contractor, K.C. Community Construction Company, Inc., for collection of delinquent fringe benefit contributions and related injunctive relief. The first suit (*Zorn, et al. v. K.C. Community,* Case No. 92–1055–CV–W–3) was brought by six multiemployer employee benefit Funds[1] and their Trustees pursuant to Sections 502 and 515 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132 and 29 U.S.C. § 1145. IBEW Local 124 is also a plaintiff in this suit pursuant to Section 301(a) of the Labor–Management Relations Act, 29 U.S.C. § 185(a), seeking payment of withheld union dues from the defendant. The second suit (*IBEW Local 124 v. K.C. Community,* Case No. 92–1105–CV–W–2) was brought by Local 124 pursuant to Section 301(a) of the Labor–Management Relations Act, 29 U.S.C. § 185(a), to enforce an arbitration award which ordered the defendant to pay its delinquencies to these Funds and to remain current in the future. Judge Hunter recused himself in Case No. 1055 and transferred that case to this Court. The Court. The cases have been consolidated and are properly before the Court on the plaintiffs' motions for preliminary injunction. A hearing was held on December 17, 1992. At that time the Court received some testimony as well as oral argument of

1. IBEW Local Union No. 124 Health and Welfare Trust Fund; Local Union No. 124 IBEW Pension Trust Fund; Local Union No. 124 IBEW Annuity Trust Fund—401(k) Plan Fund; Electrical Joint Apprenticeship and Training Trust Fund; Local Union No. 124 Vacation and Holiday Trust Fund; and National Electrical Benefit Fund.

counsel. Based on the exhibits provided at the hearing, the testimony, and briefs filed by counsel, the Court finds that the facts are basically undisputed. Accordingly, the case is ripe for a ruling on the plaintiffs' motions. The operative facts are as follows.

K.C. Community and IBEW Local 124 are parties to a collective bargaining agreement known as the Inside Agreement, effective September 4, 1990 through August 31, 1993. The Inside Agreement requires contributions by K.C. Community to the various employee benefit plans as described therein. It is those plans which are plaintiffs herein. The Inside Agreement also requires K.C. Community to withhold union dues from its employees' pay and transmit that money to Local 124. Beginning in June, 1992, K.C. Community became delinquent in its required payments, and that situation has continued. The total delinquencies which have accrued during the period June through November, 1992, undisputed by the defendant, are as follows.

| | | |
|---|---|---|
| June | — | $ 17,092.67 |
| July | — | 63,319.06 |
| August | — | 74,525.48 |
| September | — | 35,080.74 |
| October | — | 20,985.69 |
| November | — | 25,214.00 |
| Total | | $236,617.64 |

The payments which have been received by the plaintiffs against this balance total $84,064.92, of which $45,000.00 was paid by Amwest Surety pursuant to a performance bond maintained by the defendant as required by Section 2.06(a) of the Inside Agreement. Hence, as of November 30, 1992, the defendant is delinquent to the plaintiffs in the amount of $161,183.97, which includes 5% liquidated damages provided by Section 2.07(b) of the Inside Agreement.[2]

On November 17, 1992, the six benefit Funds and their Trustees filed a collection action pursuant to Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145. ERISA specifically grants the Court authority to grant injunctive relief. 29 U.S.C. § 1132(a)(3).

On October 21, 1992, Local 124 filed a grievance against K.C. Community, pursuant to Section 1.06 of the Inside Agreement, seeking payment of all delinquencies, and related relief. A hearing was held before the Joint Labor–Management Committee at which both Local 124 and K.C. Community appeared and provided evidence and testimony. On November 3, 1992, the Joint Labor–Management Committee issued a unanimous award finding the defendant delinquent as alleged and ordering the defendant to take certain action.

The Committee's Decision was as follows:

The Joint Labor Management Committee determines that Kansas City Community Construction Company, Inc. is in violation of Article II, Sections 2.07(a), (b), and (c) of the Inside Agreement for failure to pay all benefit contributions due for the months of June, July, August and September, 1992.

In accordance with that Decision, the Committee ordered the following Remedy:

1. By Monday, November 16, 1992, Kansas City Community Construction Company, Inc. shall pay or have paid on its behalf, all fringe benefit contributions due for the month of October, 1992 to the appropriate funds as specified in the Inside Agreement, along with an accurate accounting of employees, hours worked, and projects on which employees worked for the month of October, 1992.

2. By Monday, November 16, 1992, Kansas City Community Construction Company, Inc. shall reach a Payment Agreement with the Trustees of the various funds whereby amounts due and owing the various funds for the

2. Although Section 2.07(b) of the Inside Agreement provides for liquidated damages of 5%, the Eighth Circuit has held that such liquidated damage provisions are preempted by ERISA, 29 U.S.C. § 1132(g)(2). *Carpenters & Joiners Welfare Fund v. Gittleman Corp.*, 857 F.2d 476 (8th Cir.1988). This does not, however, apply to the suit by Local 124 to enforce an arbitration award.

months of June, July, August and September, 1992 shall be paid. Full compliance with the terms of the Payment Agreement shall be required.

3. Kansas City Community Construction Company, Inc. must remain current on all future fringe benefit contributions due and owing the various funds.

4. If full compliance with Parts No. 1, 2, and 3 is not achieved or maintained by Kansas City Community Construction Company, Inc., then all delinquent contributions for the months of June, July, August, September, and subsequent months shall immediately be payable, including any interest and penalties mandated by the Inside Agreement. In addition, Kansas City Community Construction Company, Inc., shall pay fringe benefit contributions on a weekly basis, in accordance with Article II, Section 2.06(e), beginning Friday, November 20, 1992. Weekly payments shall continue until such a time that Kansas City Community Construction Company, Inc. becomes and remains current for a period of time not less than three consecutive months.

The Committee's Award concluded with the following observation:

This decision is final and binding. Nothing in this Decision shall be construed as prohibiting judicial enforcement should it be necessary. Furthermore, nothing in this Decision shall be construed as prohibiting or limiting the Trustees of the various funds from performing their duties as Trustees.

In their motion for a preliminary injunction, the Funds seek an order directing the defendant to immediately make contributions for the month of November, 1992, to the Health and Welfare Trust, the Local 124 Pension Fund, the Local 124 Vacation and Holiday Fund, and the NEBF Fund, and to make future contributions to those Funds as they become due for each succeeding month thereafter. In its motion, Local 124 seeks a preliminary injunction ordering the defendant to comply with the terms of the November 3, 1992, Award of the Joint Labor–Management Committee.

■ In *Dataphase Systems, Inc. v. C.L. Systems, Inc.,* 640 F.2d 109 (8th Cir.1981), the Eighth Circuit ruled that the determination of whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on the defendant; (3) the probability that movant will succeed on the merits; and (4) the public interest. The plaintiffs have clearly and convincingly met each of these criteria. For the following reasons, the Court will grant both motions for a preliminary injunction.

## IRREPARABLE HARM

In evaluating this element, ERISA Section 515, 29 U.S.C. § 1145, defines the basic obligation:

§ 1145. **Delinquent contributions.**

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

Section 502 of ERISA, 29 U.S.C. § 1132, provides in relevant part, Section 1132(a)(3), that a civil action may be brought

by a participant, beneficiary, or *fiduciary* (A) *to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan,* or (B) *to obtain other appropriate equitable relief* (i) *to redress such violations or* (ii) *to enforce any provisions of this subchapter or the terms of the plan;*

(Emphasis added.) In addition, § 1132(g)(2)(E) provides that in cases where a judgment is awarded, the Court shall also award the plan

such other legal or equitable relief as the court deems appropriate.

While the instant case is not yet ripe for judgment, these sections of ERISA evidence Congressional approval for the use

by federal district courts of injunctive relief.

In *Laborers Fringe Benefit Funds v. Northwest Concrete*, 640 F.2d 1350 (6th Cir.1981), the sole question was whether or not a fiduciary of an employee benefit plan could bring an action under ERISA to enjoin a recalcitrant employer from failing to comply with the benefit payment provisions of a labor agreement. There, as here, the controlling issue was actual and not prospective injury to the plan. That Court went on to hold that the Fund did not have an adequate legal remedy because the employer was likely to continue to be delinquent in its contributions. In granting injunctive relief, the Court found irreparable harm, not only in the possibility of employees losing health care coverage, but also because it was unlikely that the defendant would make timely contributions in the future. *See also Lewart v. Woodhull Care Center Associates*, 549 F.Supp. 879 (S.D.N.Y.1982) (an ERISA collection action in which the Court stated "[u]nder ERISA, this Court has been affirmatively authorized by Congress to issue an injunction in this type of situation"); and *Onondaga County Laborers Health, Welfare, Pension, Annuity and Training Fund v. Sal Masonry Contractors, Inc.*, 1992 WL 75051 (N.D.N.Y.1992). In short, there is federal precedent for the general proposition that an employee benefit plan is entitled to preliminary and permanent injunctive relief against an employer which has demonstrated a propensity to be delinquent in its contributions to the plan. Against this general legal background, the Court finds the following specific instances of irreparable harm in this case:

1. The defendant admits that it is delinquent and concedes that it has no assets to pay this delinquency. Furthermore, the defendant has in no way indicated that it will be able to make future contributions as they come due. Yet, defendant continues to work projects which requires its contribution to these funds. Accordingly, the plaintiffs clearly have no adequate remedy at law. A money judgment against the defendant would be worthless.

2. There is a possibility that employees could lose the health care benefits which are currently provided at no cost to the employee.

3. The Health and Welfare Fund is in extremely precarious financial condition and is clearly in no position to subsidize a contributing employer. The Fund has a current reserve of approximately $140,000, whereas an adequate reserve for a Fund of this size, which pays approximately $100,000 per week in benefits, would be five million dollars.

4. The pension funds could suffer irreparable harm because they could be forced to grant pension benefits to employees for whom no contributions had been made. While one particular employer's delinquencies might not undermine the actuarial soundness of a large pension plan, it appears that this employer's continued delinquency could have that effect.

5. Employees have lost their vacation and holiday benefits. The defendant's contributions to the Vacation and Holiday Fund consist of money withheld from its employees' after-tax wages.

In light of the above, we find that this criterion supports the plaintiffs. The plaintiffs and the employees they represent will clearly suffer irreparable harm unless injunctive relief is granted.

## BALANCE OF HARM

If injunctive relief were denied, the plaintiffs would continue to suffer irreparable harm in direct proportion to the amount of hours worked by the defendant under the Inside Agreement each month. On the other hand, the only "harm" to the defendant is a requirement that it abide by the terms of the agreement it has made. The defendant does not suffer legal harm by this Court's ruling that it cannot have it both ways. It must either meet its obligations or discontinue its operations until it is able to do so. See *National Association of Broadcast Employees and Technicians v. Sunbeam Television Corp.*, 606 F.Supp. 111 (S.D.Fla.1984).

## PROBABILITY OF SUCCESS ON THE MERITS

 Plaintiffs have a strong case on the merits. The defendant admits liability in the collection action brought by the Funds and Local 124. Its only "defense", therefore, is an inability to pay. With regard to specific enforcement of the arbitration award in the Local 124 case, Local 124 is clearly entitled to the relief sought. *United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). In addition to inability to pay, the only other defense raised is a contention that the award of the Joint Labor–Management Committee is not final and binding.[3] This contention is without merit. First, the Court observes that as a general proposition joint labor-management committee decisions, such as the one involved in the instant case, are final and binding arbitration awards. *General Drivers, Warehousemen and Helpers, Local Union No. 89 v. Riss & Co.*, 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963); *Warren v. International Brotherhood of Teamsters*, 544 F.2d 334 (8th Cir.1976). K.C. Community contends that Local 124 has failed to exhaust the grievance procedure in that it failed to refer the case to the Council on Industrial Relations for the Electrical Contracting Industry, which, the defendant contends, is the only forum with the authority to grant final and binding relief. In this connection, the defendant relies on Section 1.08 of the Inside Agreement, which provides as follows:

> **Section 1.08 Arbitration by CIR:** *Should the Labor–Management Committee fail to agree or to adjust any matter, such shall then be referred to the Council on Industrial Relations for the Electrical Contracting Industry for adjudication.* The Council's decisions shall be final and binding on both parties hereto.

(Emphasis added.) This Court believes that action by the Council on Industrial Relations is required only when the Joint Labor–Management Committee deadlocks. It is clear, however, both from the prof-

fered testimony of the plaintiffs and conclusive federal court precedent that decisions of the Joint Labor–Management Committee are also final and binding, and the Court so rules. *See IBEW Local 130 v. Mississippi Valley Electric Co.*, 175 F.Supp. 312 (E.D.La.1959), aff'd 285 F.2d 229 (5th Cir.1960); *I.B.E.W. Local 265 v. O.K. Electric Co., Inc.*, 793 F.2d 214 (8th Cir.1986); *I.B.E.W. Local 24 v. Bloom & Company, Inc.*, 242 F.Supp. 421 (D.C.Md. 1965); *I.B.E.W. Local 2 v. Gerstner Electric, Inc.*, 614 F.Supp. 874 (E.D.Mo.1985); and *Action Electric, Inc. v. I.B.E.W. Local 292*, 856 F.2d 1062 (8th Cir.1988). Furthermore, it has been settled law since 1984 that in the absence of specific provisions contained in either the collective bargaining agreement or the plan's trust agreement, trustees are not required to exhaust any contractual arbitration procedures prior to pursuit of an action to collect delinquent contributions. *Schneider Moving & Storage Company v. Robbins and Prosser's Moving and Storage Company v. Robbins*, 466 U.S. 364, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984).

## THE PUBLIC INTEREST

It is clearly in the public interest for a federal court to protect employee benefit plans and their participants and beneficiaries by ordering a company to pay its delinquent contributions and to avoid future delinquencies. The role of trustees of employee benefit funds is an extremely difficult one. They are constantly in danger of being sued for breach of their fiduciary responsibilities, an important one of which is keeping employers current in their contributions. Indeed, this function is obviously one of the most important fiduciary duties because it bears directly on a plan's solvency and ability to survive.

In light of the above, it is hereby

ORDERED that the defendant, Kansas City Community Construction Company, Inc. is enjoined from performing any electrical construction work within the geographical jurisdiction of IBEW Local Union No. 124 as long as it is a party to the Inside

---

**3.** The defendant abandoned his set-off defense in open court.

Agreement, unless the performance of such work is done in strict compliance with the Award of the Joint Labor–Management Committee dated November 3, 1992. Due to the passage of time since the Award was issued, the defendant is ordered to take the following actions as full compliance with the Award:

1. Within ten working days of the date of this injunction pay all delinquent contributions owed to the six employee benefit Fund plaintiffs herein, including any interest and penalties mandated by the Inside Agreement.

2. Begin paying all fringe benefit contributions on a weekly basis in accordance with Section 2.06(e) of the Inside Agreement, commencing the first pay day after the issuance of this injunction, such weekly contributions to continue until the defendant becomes and remains current in its payments for a period of not less than three consecutive months.

3. Remain current with regard to all future fringe benefit contributions.

IT IS SO ORDERED.